

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-2001

# Eddy v. Virgin Island Water Power Auth

Precedential or Non-Precedential:

Docket 99-3849

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Eddy v. Virgin Island Water Power Auth" (2001). *2001 Decisions.* Paper 152.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/152

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 10, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3849

GABRIELLE EDDY

v.

VIRGIN ISLANDS WATER AND POWER AUTHORITY;
JAMES BROWN; JOHN DOE I; JOHN DOE II;
JOHN DOE III; JOHN DOE IV

      Virgin Islands Water and Power Authority;
      James Brown; Randolph Harley,

      Appellants

ON APPEAL FROM THE DISTRICT COURT OF
THE VIRGIN ISLANDS

(District Court No. 96-cv-00048)
District Court Judge: Thomas K. Moore

Argued: December 5, 2000

Before: MANSMANN, ALITO, Circuit Judges, and
ACKERMAN, Senior District Judge[1]

(Opinion Filed: July 10, 2001)

_____
1. Honorable Harold A. Ackerman, Senior Judge of the United States
District Court for the District of New Jersey, sitting by designation.

SAMUEL H. HALL, JR. (argued)
MARIE E. THOMAS
Birch de Jongh Hindels & Hall
Poinsettia House at Bluebeard's
 Castle
No. 1330 Estate Taarnebjerg
St. Thomas, V.I. 00802

Counsel for Appellant

JAMES M. DERR (argued)
28-29 Norre Gade
P.O. Box 664
St. Thomas, V.I. 00804

Counsel for Appellees

OPINION OF THE COURT

ALITO, Circuit Judge:

This is an appeal from a District Court or der denying a motion for summary judgment by the defendants in an action asserting a constitutional tort claim. The defendants raised the defense of qualified immunity, but the District Court rejected that defense, primarily on the ground that it had been waived because it was not asserted until summary judgment. We reverse in part and remand for further proceedings.

I.

Plaintiff Gabrielle Eddy was employed by the V irgin Islands Water and Power Authority ("W APA") as a lineman. The parties disagree about the extent of his training and whether he was trained to perform work at WAPA's facility at Krum Bay, St. Thomas, the location of the accident that led to this lawsuit.

On June 2, 1994, a switch on a high voltage line needed to be replaced. A determination was made that the work would be done without shutting off the power . Defendant James Brown, the acting Superintendent of the Line

2

Department, instructed Eddy to perform the work. Eddy claims that he informed Brown that he was unqualified to do the work but that Brown told him that he would be subject to discipline and possible termination if he refused. According to Eddy, WAPA pr ovided him with improper clothing, tools, and equipment to perfor m this work on a live line. Among other problems, Eddy asserts that he was required to use an ordinary metal ratchet wrench (as opposed to the insulated wrenches normally used for these procedures) and was forced to wear a polyester uniform (instead of the 100% cotton clothing requir ed under OSHA regulations). During the switch replacement, Eddy's wrench slipped, passed in the vicinity of an electric insulator and, as Eddy characterizes it in his brief, he was engulfed in a fireball. After this incident, WAP A fired Eddy, and OSHA cited WAPA for a number of violations.

Eddy commenced this action against WAP A and several named and unnamed individuals. In addition to thr ee tort claims under Virgin Islands law, Eddy asserted a claim based directly on the Fourteenth Amendment and a claim under 42 U.S.C. S 1983. Eddy voluntarily dismissed two of the three territorial law claims, and the r emaining territorial law claim is not before us in this appeal. In addition, the District Court dismissed the claim based directly on the Fourteenth Amendment, holding that it was "duplicative of " the section 1983 claim, and that dismissal is likewise not before us now.

The defendants moved for summary judgment on the section 1983 claim, but the District Court denied their motion. The Court held that "Eddy clearly has established that material facts remain in dispute concer ning whether the individual defendants' actions were so outrageous that they `shock the conscience' of [the] Court." July 20, 1999 Dist. Ct. Op. at 6-7. The District Court rejected the defendants' defense of qualified immunity because they "did not raise this affirmative defense untilfiling this motion for summary judgment, approximately eighteen months after this case began." Id. at 7. The Court interpreted dictum in a footnote in an opinion of this Court to mean that"failure to include qualified immunity in [the] answer to [the] complaint results in the involuntary waiver of this

3

affirmative defense." Id. (citing Frett v. Government of the Virgin Islands, 839 F.2d 968, 973 n.1 (3d Cir. 1988)). The District Court went on to provide two alter native bases for rejecting the defense of qualified immunity. The Court concluded that the defendants had failed to show that their challenged actions were "discretionary" rather than ministerial, id. at 7 n.2, and that "it is a proper question for the jury to determine if defendants knew or r easonably should have known that their conduct would subject them to liability." Id. at 8. This appeal followed.2

II.

The appellants invoke our jurisdiction under 28 U.S.C. S 1291, which authorizes us to hear appeals fr om "final decisions" of the District Court of the V irgin Islands. The order in question here is not a "final" order in the usual sense, but certain collateral orders ar e considered to be final orders and thus are immediately appealable. To qualify under the collateral order doctrine, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unr eviewable on appeal from a final judgment. See Johnson v. Jones, 515 U.S. 304, 310 (1995); In re Montgomery County, 215 F.3d 367, 373 (3d Cir. 2000). The Supreme Court has r ecognized that an order rejecting a qualified immunity defense at the summary judgment stage may be immediately appealable, see Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), but "only to the extent the denial turns on an issue of law." In re Montgomery County, 215 F.3d at 373 (citing Johnson v. Jones, 515 U.S. at 313); Grant v. City of Pittsburgh, 98 F.3d 116, 119-20 (3d Cir. 1996) ("To the extent they turn on an issue of law, decisions denying public officials qualified immunity are considered final under the collateral order doctrine."). If we have jurisdiction to r eview an order rejecting qualified immunity at the summary judgment stage, our review of the order is plenary. See, e.g., Acierno v. Cloutier, 40 F.3d 597, 609 (3d Cir . 1994).

_____

2. Only named individual defendants James Br own and Randolph Harley seek relief on appeal. See Appellants' Br. at 42.

4

Under the qualified immunity defense, "gover nment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether qualified immunity applies in a specific case, we "first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Siegert v. Gilley, 500 U.S. 226, 232 (1991); Torres v. United States, 200 F.3d 179, 184 (3d Cir. 1999); Giuffre v. Bissell, 31 F.3d 1241, 1247, 1255 (3d Cir. 1994). "[I]f so, [we] proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson, 526 U.S. at 609 (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)).

"A right is clearly established if its outlines are sufficiently clear that a reasonable officer would understand that his actions violate the right." Sterling v. Borough of Minersville, 232 F.3d 190, 193 (3d Cir. 2000). Moreover, "in the light of pr e-existing law the unlawfulness must be apparent." Anderson v. Cr eighton, 483 U.S. 635, 640 (1987). A right may be clearly established, however, even if there is no "previous pr ecedent directly in point." Good v. Dauphin County Soc. Servs. for Childr en & Youth, 891 F.2d 1087, 1092 (3d Cir. 1989); see also Assaf v. Field, 178 F.3d 170, 177 (3d Cir. 1999)."The ultimate issue is whether . . . reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." Good, 891 F.2d at 1092.

III.

With these principles in mind, we tur n to the specific issues before us in this appeal. The first issue that we must address is the correctness of the District Court's holding that the individual defendants waived the defense of qualified immunity by failing to raise the defense until they submitted their motion for summary judgment. This is an issue of law over which we have jurisdiction under the

collateral order doctrine, and we hold that the District Court failed to apply the proper standar d for determining whether a waiver occurred.

Qualified immunity is an affirmative defense, see Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir . 1995), and therefore under Rule 8(c) of the Federal Rules of Civil Pr ocedure it should be asserted in the appropriate r esponsive pleading. But under established circuit law, the failur e to do so does not automatically result in a waiver. Charpentier v. Godsil, 937 F.2d 859, 863 (3d Cir. 1991); see also Pro v. Donatucci, 81 F.3d 1283, 1286 n.2 (3d Cir. 1996); Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1373 (3d Cir. 1993). As we have stated

> Under Fed.R.Civ.P. 15(a), a responsive pleading may be amended at any time by leave of court to include an affirmative defense, and "leave shall be freely given when justice so requires." Unless the opposing party will be prejudiced, leave to amend should generally be allowed. Moreover, under Fed.R.Civ.P . 15(c), issues tried by the express or implied consent of the parties are "treated in all respects as if they had been raised in the pleadings." It has been held that a "defendant does not waive an affirmative defense if`[h]e raised the issue at a pragmatically sufficient time, and[the plaintiff] was not prejudiced in its ability to respond.' "

Charpentier, 937 F.2d at 863–64 (internal citations omitted). Thus, "[e]ven though a motion for summary judgment is not the most appropriate way to raise a previously unpled defense of immunity," Kleinknecht, 989 F .2d at 1374, in cases in which the plaintiff was not pr ejudiced, we have held that there was no waiver. See id.; Charpentier, 937 F.2d at 863–64.

It is true that the opinion in Frett, on which the District Court apparently relied, stated that the failure of an answer to set forth an affirmative defense "r esults in the involuntary waiver of [the] defense[ ] and [its] exclusion from the case," 839 F.2d at 973 n.1, but this statement, which in any event is plainly dictum, does not addr ess the possibility of a late amendment of the answer with leave of court.

6

We recognize the dilemma that courts face when defendants fail to raise the defense of qualified immunity at an early stage of the litigation. On the one hand, permitting the defense to be raised at an advanced stage of the case may waste time and cause prejudice to the opposing side. See Guzman–Rivera v. Rivera–Cruz, 98 F .3d 664, 667 (1st Cir. 1996) (expressing concerns about witnesses becoming unavailable, memories fading, attorneys fees accumulating, and imposing additional costs on the court system). Accordingly, it has been held that a "trial court has discretion to find a waiver if a defendant fails to assert the defense within the time limits set by the court or if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes." English v. Dyke, 23 F.3d 1086, 1090 (6th Cir. 1994). The First Circuit has taken a similar approach. See Guzman–Rivera, 98 F.3d at 668. On the other hand, an overly strict waiver rule may undermine the qualified immunity defense, which serves important public purposes. See English, 23 F.3d at 1089. As the First Circuit has written, "[b]ecause the doctrine of qualified immunity recognizes that litigation is costly to defendants, officials may plead the defense at various stages in the pr oceedings."[3] Guzman–Rivera, 98 F.3d at 667.

We agree with the conclusions of the First and Sixth Circuits that the defense of qualified immunity is not necessarily waived by a defendant who fails to raise it until the summary judgment stage. Instead, the District Court must exercise its discretion and deter mine whether there was a reasonable modicum of diligence in raising the defense. The District Court must also consider whether the plaintiff has been prejudiced by the delay.

In view of the circuit precedent noted above, we must reverse the decision of the District Court and remand for a more detailed inquiry regarding the issue of waiver. In particular, the Court must inquire whether the defendants

_____

3. For example, qualified immunity may be raised in a motion to dismiss at the pleading stage, in a motion for summary judgment after discovery, or as an affirmative defense at trial. See Guzman–Rivera, 98 F.3d at 667; English, 23 F.3d at 1089.

violated any scheduling orders in raising the defense for the first time in their summary judgment motions, whether they delayed asserting the defense for tactical purposes or any improper reason, and, most important, whether the delay prejudiced the plaintiff 's case. With respect to this last factor, we note that Eddy, in his opposition to the summary judgment motion, failed to argue that he was prejudiced in any specific way by the delay. See Plaintiff 's Opposition to Defendants' Motion for Summary Judgment, Appendix at 344-47. However, Eddy may be able to make a showing of specific prejudice on remand, and thus we leave it for the District Court, in the first instance, to decide whether there was a waiver under the law of our circuit.

IV.

A.

We now turn to the District Court's alternative grounds for rejecting the defendants' claim of qualified immunity. As previous noted, the Court stated in a footnote that this defense would fail even if the defendants had not waived it, because they failed to show that their actions wer e taken within the scope of their discretionary authority. See July 20, 1999 Dist. Ct. Op. at 7 n.2. The Court went on to observe that Eddy had "produced substantial evidence demonstrating that Brown's actions follow a long-standing policy and pattern of intimidating and coer cing employees to engage in unsafe work practices." Id. And the Court added that "[t]his counters defendants' ar guments that their actions were discretionary." Id.

The Supreme Court has stated that qualified immunity applies to "government officials per forming discretionary functions," Harlow, 457 U.S. at 818, but the definition of a discretionary function is broad. "A law that fails to specify the precise action that the official must take in each instance creates only discretionary authority; and that authority remains discretionary however egregiously it is abused." Davis v. Scherer, 468 U.S. 183, 196 n.14 (1984); see also Sellers v. Baer, 28 F.3d 895, 902 (8th Cir. 1994) ("For qualified immunity purposes, a duty is`ministerial'

8

only where the statute or regulation leaves no room for discretion."). Cf. Varronev. Bilotti, 123 F.3d 75, 82 (2d Cir. 1997) (noting that the continued validity of the ministerial duty exception has been questioned and that, in any event, it is "extremely narrow"); Horta v. Sullivan, 4 F.3d 2, 11 (1st Cir. 1993) (same).

The correctness of the District Court's interpretation of the scope of the ministerial duty exception is a question of law that we may reach in a collateral order appeal, and we conclude that the District Court's understanding was mistaken. Even if WAPA had a "long-standing policy and pattern of intimidating and coercing employees to engage in unsafe work practices," July 20 Dist. Ct. Op. at 7 n.2, that does not mean that WAPA "specif[ied] the precise action," Davis v. Scherer, 468 U.S. at 196 n.14, that the individual defendants took in this case, and thus it does not follow that their actions were ministerial. Accordingly, the rejection of the qualified immunity defense may not be affirmed on this ground.

B.

The District Court's final ground for rejecting the claim of qualified immunity, as we understand it, was that the constitutional right that Eddy asserted -- the substantive due process right to be free from conduct by a governmental employer4 that shocks the conscience -- was clearly established at the time in question and that, without a trial, it could not be determined whether the defendants' conduct was outrageous enough to reach this level. The District Court's holding may be separated into legal and factual components. The legal component, which we may reach in this appeal, includes two questions: (a) whether

_____

4. Under the Revised Organic Act, 48 U.S.C.S 1561, the Due Process Clause applies to the Government of the Virgin Islands. "Thus, the Organic Act requires the same due process analysis that would be utilized under the federal constitution." Hendrickson v. Reg O Co., 657 F.2d 9, 14 n.2 (3d Cir. 1981).

In this case, the District Court held that WAPA and the individual defendants, who are WAPA employees, are territorial actors. This issue is not before us in this appeal.

9

Eddy has alleged a substantive due process violation at all and (b) whether the right asserted was clearly established. The factual component is the question whether ther e are genuine issues regarding facts that ar e material to the determination of whether the defendants' conduct was sufficient to shock the conscience. Under Johnson v. Jones, supra, this is a question of evidentiary sufficiency that we may not address in this appeal.5

With respect to the first of the legal issues, the defendants contend that the substantive due pr ocess right

_____

5. The defendants have not argued that the District Court's decision is based on an incorrect interpretation of the intent necessary to support a substantive due process claim of the type that Eddy asserts. In County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998), the Supreme Court stated that "[w]hether the point of conscience shocking is reached when injuries are produced [by something] falling within the middle range" between negligence and intentional conduct depends on the circumstances of the case and in particular on whether the defendant had the opportunity to deliberate before engaging in the challenged conduct. Here, the District Court, in denying summary judgment, appears to have concluded that the summary judgment record was sufficient to show that the defendants knew that Eddy " `would face a risk of almost certain injury if he perfor med the work.' " July 20, 1999 Dist. Ct. Op. at 3 (quoting Feb. 5, 1997 Dist. Ct. Op. at 10). The defendants have not argued on appeal that this was the wrong legal standard. Instead, they dispute the District Court's evaluation of the facts in the summary judgment record. Under Johnson v. Jones, supra, a factual decision of this nature is not r eviewable under the collateral order doctrine.

We are also barred from r eaching the defendants' argument that the District Court's opinion reveals no factual basis for denying the summary judgment motion of defendant Harley. The question whether there is sufficient evidence in the summary judgment record to hold Harley in the case is precisely the sort of question that we may not entertain in a collateral order appeal. In Johnson v. Jones, supra, three police officers whom the plaintiff alleged had beaten him argued that the District Court had erroneously denied their summary judgment requests because "whatever evidence [the plaintif f] might have about [two other officers], he could point to no evidence that these three had beaten him or had been present while others did so." 515 U.S. at 307 (emphasis in original). The Supreme Court held that this ar gument concerned a question of evidence sufficiency that was not r eviewable in a collateral order appeal.

10

to be free from treatment that shocks the conscience does not apply to a governmental employer's tr eatment of its employees. As the defendants put it, "the Plaintiff simply cannot raise the `shocks the conscience' test in an employment relationship context." Appellants' Br. at 14. In making this argument the defendants rely primarily on Collins v. City of Harker Heights, 503 U.S. 115 (1992), and McClary v. O'Hare, 786 F.2d 83 (2d Cir. 1986), but we believe that the defendants misunderstand those decisions.

In Collins, the widow of a municipal employee who was killed in an accident on the job sued the city for which he had worked under Section 1983, claiming that the city had violated the Due Process Clause. As we explained in our en banc decision in Fagan v. City of Vineland , 22 F.3d 1296, 1304 (3d Cir. 1994), the plaintiff in Collins "advanced two theories of recovery": first, " `that the Federal Constitution impose[d] a duty on the city to provide its employees with minimal level of safety and security in the workplace' " and, second, " `that the city's "deliberate indifference" to [the deceased's] safety was arbitrary Government action that must "shock the conscience" of federal judges.' " Id. (quoting Collins, 503 U.S. at 126). After r ejecting the first theory, the Supreme Court turned to the"shocks the conscience" theory and stated:

> We also are not persuaded that the city's alleged failure
> to train its employees, or to warn them about known
> risks of harm, was an omission that can pr operly be
> characterized as arbitrary, or conscience shocking, in a
> constitutional sense. Petitioner's claim is analogous to
> a fairly typical state-law tort claim: The city br eached
> its duty of care to her husband by failing to provide a
> safe work environment. Because the Due Pr ocess
> Clause "does not purport to supplant traditional tort
> law in laying down rules of conduct to regulate liability
> for injuries that attend living together in society," . . .
> we have previously rejected claims that the Due
> Process Clause should be interpreted to impose federal
> duties that are analogous to those traditionally
> imposed by state tort law . . . . [This] r easoning . . .
> applies with special force to claims asserted against
> public employers because state law, rather than the

11

> Federal Constitution, generally governs the substance
> of the employment relationship. . . .

Collins, 503 U.S. at 128.

Unlike the defendants, we do not read this passage or anything else in Collins to mean that the plaintiff in that case would not have stated a substantive due process claim if she had alleged conduct on the part of the city that satisfied the demanding shocks the conscience test. Rather, we understand Collins to mean that the allegations in that case did not rise to the conscience-shocking level and that the Due Process Clause does not reach a public employer's ordinary breach of its duty of care relative to its employees. See Fagan, 22 F.3d at 1304 (noting that Collins "unanimously reaffirmed the viability of the `shocks the conscience' standard"). Although the Second Circuit's opinion in McClary is less clear, we view it as consistent with our interpretation of Collins. See 786 F.2d at 89 & n.6. We thus reject the argument that, because of Eddy's employment relationship with WAPA, he has not alleged a violation of the Due Process Clause.

In light of our en banc decision in Fagan, we must also reject the argument that the right that Eddy asserts was not clearly established at the time of his injury. As noted, in Fagan, we interpreted Collins , a case involving a workplace accident, as "unanimously reaffirm[ing] the viability of the `shocks the conscience' standard." 22 F.3d at 1304. Cf. County of Sacramento v. Lewis , 523 U.S. 833 (1998) (holding, after the events at issue here, that executive action violates substantive due process if it shocks the conscience). In reaching this conclusion, we do not rely, as the District Court did, on regulations issued by the Occupational Health and Safety Administration. Eddy is asserting a claim against the individual defendants for violating the Due Process Clause,6  and the defendants "do

_____

6. Eddy's brief makes it clear that his Section 1983 claim asserts a constitutional violation, not a violation of the OSH Act or OSHA regulations. See Appellee's Br. at 20. Therefore, we need not and do not decide whether a plaintiff may state a claim under section 1983 for a violation of the OSH Act, 29 U.S.C. S 651 et seq. or regulations issued thereunder. See Minichello v. U.S. Industries, 756 F.2d 26 (6th Cir. 1985) (OSHA regulations not relevant to civil liability).

12

not forfeit their immunity [with respect to that constitutional claim] by violating some other statute or regulation." Davis v. Scherer, 468 U.S. at 194 n.12. We also do not rely on the "state created danger" theory of substantive due process liability, see Kneipp v. Tedder, 95 1199 (3d Cir. 1996), as Eddy has to some degr ee on appeal.7

In summary, we hold as follows. We reverse the decision of the District Court insofar as it holds that the individual defendants waived the defense of qualified immunity. On remand, the District Court must reconsider this question under the standards set out in our case law. If the District Court concludes that the defense has not been waived under these standards, the individual defendants may assert that defense at trial.

We reverse the decision of the District Court insofar as it holds that the individual defendants may not assert the defense of qualified immunity because their conduct was not discretionary. As we have explained, this holding was apparently based on a mistaken interpretation of the ministerial exception to the defense. On remand, the District Court may reconsider the applicability of the exception under the correct standard.

We affirm the District Court's decision denying summary judgment on qualified immunity grounds because Eddy has alleged a violation of a clearly established constitutional right. We dismiss the appeal insofar as it contests the sufficiency of the evidence to show that the conduct of either or both of the individual defendants shocked the conscience.

_____

7. We do not reach the question whether, as Eddy has argued on appeal, the District Court erred in holding that Eddy cannot sue WAPA itself and cannot sue the individual defendants in their official capacities under 42 U.S.C. S 1983. This question is not within the scope of our limited jurisdiction under the collateral order doctrine.

13

MANSMANN, Circuit Judge, concurring:

I join in the Court's decision to affirm the District Court's denial of summary judgment on the ground that an employee's constitutional right to be free fr om "arbitrary, or conscience shocking" injurious conduct by a state instrumentality was clearly established at the time of Mr. Eddy's injury. I write separately because my analysis diverges from that of my colleagues in two respects.

First, as a technical matter, I would not characterize this Court's judgment as a reversal in part, notwithstanding our rejection of some of the alternative gr ounds upon which the District Court relied. The Order under r eview denied defendants' motion for summary judgment. This Court today upholds that denial. I would characterize this result as an affirmance on an alternate gr ound. For the same reason, I would award costs to Eddy, as the prevailing party on appeal.

Second, while I agree with the majority that the defendants' failure to raise the affir mative defense of qualified immunity prior to the summary judgment stage does not automatically result in a waiver , it appears that the District Court may have based its finding of waiver on appropriate discretionary factors such as lack of diligence and resulting prejudice,1 rather than on the per se rule properly rejected by the majority. The matter is of little moment at this stage in view of our affirmance on other grounds. If the District Court's decision was predicated on consideration of the appropriate factors, then it should more clearly articulate its reasoning on r emand.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit
_____

1. Cf. Yates v. City of Cleveland, 941 F.2d 444, 449 (6th Cir. 1991) (observing that during interval between filing of complaint and delayed assertion of defense, plaintiff "engaged in extensive discovery and invested, one would imagine, a considerable amount in time, money and energy").