

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2002

# Ricker v. Weston

Precedential or Non-Precedential:

Docket 0-4322

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Ricker v. Weston" (2002). *2002 Decisions.* Paper 32.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/32

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 00-4322
_____

MITCHELL RICKER; ALESSIO ZAGRA; ERIC FREEMAN

v.

SERGEANT MICHAEL D. WESTON, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS A MEMBER OF THE EASTON POLICE DEPARTMENT;
OFFICER JOHN D. REMALEY, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY
AS A MEMBER OF THE EASTON POLICE DEPARTMENT;
CAPTAIN DOUGLAS D. SCHLEGEL, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS A MEMBER OF THE EASTON POLICE DEPARTMENT;
CHIEF LAWRENCE R. PALMER, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS A MEMBER OF THE EASTON POLICE DEPARTMENT;
MAYOR THOMAS F. GOLDSMITH, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS MAYOR OF THE CITY OF EASTON;
THE CITY OF EASTON; THE CITY OF EASTON POLICE DEPARTMENT;
JESSE E. SOLLMAN, OFFICER; EDWARD J. ZUKASKY, CAPTAIN

Michael D. Weston; Douglas D. Schlegel;
Lawrence R. Palmer; Thomas F. Goldsmith;
Edward J. Zukasky,

Appellants
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 99-cv-05879
District Judge:  The Honorable Stewart Dalzell
_____

Argued December 13, 2001
_____

Before: SCIRICA, BARRY, Circuit Judges, and MUNLEY, District Judge

(Opinion Filed: January 24, 2002)
_____


Daniel J. Dugan, Esq. (Argued)
Spector, Gadon & Rosen
1635 Market Street
Seven Penn Center, 7th Floor
Philadelphia, PA 19103

Attorneys for Appellants

Arthur J. Russo, Esq. (Argued)
235 Frost Avenue
Phillipsburg, NJ 08865

Attorney for Appellee Mitchell Ricker

John P. Karoly, Jr., Esq. (Argued)
Law Offices of John Karoly
1555 North 18th Street
Allentown, PA 18104

Attorney for Appellee Alessio Zagra

Harold J.J. DeWalt, Jr., Esq. (Argued)
8 North Main Street
Nazareth, PA 18064

Attorney for Appellee Eric Freeman

_____

OPINION

_____

BARRY, Circuit Judge

Appellants Sergeant Michael Weston, Captain Douglas Schlegel, Captain Edward
Zukasky, Chief Lawrence Palmer, and Mayor Thomas Goldsmith are defendants together
with Officer John Remaley, Officer Jesse Sollman, and the City of Easton, Pennsylvania,
in an action brought by appellees Mitchell Ricker, Alessio Zagra, and Eric Freeman.
Appellants appeal from the order of the United States District Court for the Eastern
District of Pennsylvania denying their motion for summary judgment insofar as that order
denied them qualified immunity on the claims brought under 42 U.S.C. 1983. The
District Court had jurisdiction under 28 U.S.C.    1331 and 1343(a), and we have
jurisdiction under 28 U.S.C.    1291 and the collateral order doctrine although, as will
become clear, we lack jurisdiction to consider the factual components of the District
Court's holding. For the reasons which follow, we will reverse as to appellants Zukasky,
Palmer, and Goldsmith and will dismiss the appeal of appellants Weston and Schlegel for
lack of jurisdiction.

## I. FACTS

The facts underlying this appeal are hotly disputed, and we view those facts, as we
must, in the light most favorable to the non-moving parties   Ricker, Zagra, and
Freeman. On November 27, 1997, the annual Thanksgiving Day football game between
the Phillipsburg, New Jersey and Easton, Pennsylvania high school teams was held at
Lafayette College in Easton. After Phillipsburg won, the Phillipsburg fans, mostly
teenagers and young adults, started the traditional walk back to New Jersey across the
Delaware River via the Route 22 toll bridge. Included in the crowd of people were
Ricker, Zagra, and Freeman. As the crowd made its way across the bridge, pedestrian
traffic began to spill over from the sidewalks to the roadway. This created a hazard for
cars driving over the bridge, and the bridge was soon closed to vehicular traffic.

Five police officers from Easton's K-9 Unit and their dogs were present on the bridge. Schlegel had deployed them in anticipation of problems and in order to direct the crowd's movement across the bridge. Schlegel did not, however, assign any other officers to the bridge to support the K-9 Unit despite his fear, and later knowledge, of dangerous conditions. Schlegel was the only Easton police officer on the bridge outside of the five K-9 officers.

Of the five K-9 officers, three were defendants Remaley and Sollman and appellant Weston. Weston was the officer in charge of the K-9 Unit and was responsible for issuing all orders. Upon his instruction, the K-9 Unit formed a line across the Easton side of the bridge. A group of approximately two to three hundred people slowly formed in the center of the bridge. The officers and their dogs charged the crowd in order to disperse it. During the ensuing melee, Ricker, Zagra, and Freeman were injured from either dog bites, repeated baton blows, or both.

Zagra and his brother were part of the crowd charged by the K-9 Unit. When they saw the dogs and people panicking, they stopped moving and sought safety in the rear. Remaley yelled at Zagra to start moving and to get off the bridge. Zagra tried to explain to the officer that he and his brother had nowhere to go, but Remaley was unyielding. He hit Zagra on the right shoulder with his baton, started to shout obscenities, and ordered him "to get the fuck off the bridge right now" and to "move, scumbag, now fucking move." (A. 327-28; Zagra Dep. at 40) When Zagra repeated that he was unable to move, Remaley took out his baton and struck Zagra numerous times in the legs in an effort to "teach" Zagra how to walk. The blows and obscenities continued until Remaley was called away by Weston.

Ricker and his friends were walking in the road next to the bridge's northern sidewalk when they saw the officers charge the crowd. Frightened, Ricker tried to move out of the way. As he was climbing over the concrete barrier that separates the road from the sidewalk, he was struck in the back by Weston's baton. While hunched over the barrier, Ricker was bit by Weston's dog in the back of the left thigh. The dog continued

to grab Ricker's leg until several pedestrians were able to pull Ricker over the barrier to safety. At no time, did Weston place Ricker under arrest or order him to lie down or stop.

Meanwhile, Freeman was walking with his friends on the bridge's northern sidewalk when he observed the K-9 officers charge the crowd and attack Zagra and Ricker. When he reached the area where Ricker was being attacked, he saw two officers and their dogs. Both pairs jumped over the concrete barrier and started running in Freeman's direction. One pair ran by Freeman, but the other stopped in front of him. The dog began jumping and barking in Freeman's face and nicked Freeman's left arm. Freeman tried to run and to jump out of the dog's way, but the dog grabbed the back of his right leg and pulled him to the ground. Freeman eventually struggled free. The officer, later identified as Sollman, jumped back over the barrier and continued down the road without arresting Freeman.

With his leg ripped open, Freeman sought immediate medical attention from the first Phillipsburg police officer he spotted. The officer told him to keep walking, so he went to a second officer. As he lifted his leg to show the officer his wound, Schlegel spotted Freeman and started running after him. Afraid, Freeman began running towards Phillipsburg until his leg quit. Schlegel caught, tackled, and arrested him. With the help of two other officers, Schlegel dragged Freeman to the middle of the bridge where his patrol car was parked. Freeman was transported to the Easton Police Department headquarters where he was booked on charges of riot, failure of disorderly persons to disperse, obstructing highways, aggravated assault, simple assault, resisting arrest, and escape. Freeman was eventually acquitted of all charges.

In the months following the attacks, Goldsmith and Palmer assigned Zukasky to conduct an internal investigation of the bridge incident. Zukasky's report was allegedly incomplete, and despite its conclusion that certain of the officers had violated department policies, Palmer disciplined only Remaley for using foul language.

Even before the bridge incident, Goldsmith and Palmer were aware of past episodes of excessive force by officers in the police department. When Goldsmith

became mayor, he was advised of twenty-five outstanding lawsuits for excessive force. In particular, Schlegel was the subject of several excessive force actions. Additionally, he had been terminated by the police department as a result of an off-duty incident of violence, although he was eventually reinstated. Nonetheless, Goldsmith, upon Palmer's recommendation, promoted Schlegel to Captain of Field Services and placed him in command on November 27, 1997.

## II. DISCUSSION

The defense of qualified immunity shields government officials performing discretionary acts from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, qualified immunity is unavailable where (1) the plaintiff has alleged a violation of an actual constitutional right and (2) the right was clearly established when allegedly violated. Wilson v. Layne, 526 U.S. 603, 609 (1999). Under the collateral order doctrine, an order denying qualified immunity at the summary judgment stage may be immediately appealable if the denial turned on a question of law. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Eddy v. Virgin Islands Water & Power Authority, 256 F.3d 204, 208 (3d Cir. 2001). To the extent a question of law is presented, this Court has jurisdiction and exercises plenary review. Eddy, 256 F.3d at 208. In exercising such review, the Court adopts the facts assumed by the district court when denying the motion for summary judgment. Johnson v. Jones, 515 U.S. 304, 319 (1995). If, however, the denial rested on a determination that there were genuine issues of material fact for trial, the question of evidentiary sufficiency is not immediately appealable. Id. at 313.

We note at the outset the difficulty we have had in parsing what precisely is alleged against each appellant Freeman's Count 9, for example, entitled "Violation of Constitutional Rights," is essentially a blunderbuss count, nonspecific as to what any of the numerous defendants are alleged to have done. Similarly, we have had difficulty because appellants Weston and Schlegel sought qualified immunity as to all Section 1983

claims except the Fourth Amendment claims in which they were implicated by virtue of
direct physical contact with one or more of the appellees.  Thus, Weston asserted
immunity vis-a-vis Freeman's and Zagra's complaints, but not Ricker's, and Schlegel
asserted immunity vis-a-vis Zagra's and Ricker's complaints, but not Freeman's. In a
nutshell, Weston and Schlegel seem to believe, at least as to the Fourth Amendment
claims, that they should be immunized for any actions   or inactions which did not
involve direct physical contact.

     The District Court was similarly hampered in its ability to apply the doctrine of
qualified immunity.

          [O]ur analysis on this analysis has been handicapped by the extraordinary
     absence of specificity in all parties' briefs.  The parties persist in the
     practice of arguing through conclusory statements supported by generalized
     reference to the extensive statements of fact with which they each open
     their briefs. This places us in the unwelcome position of having to search
     through the parties' claimed fact sets in search of the information that
     supports their arguments.  While we will engage in this enterprise to a
     certain extent, as the Court of Appeals for the Seventh Circuit has observed
     in a slightly different context, "[j]udges are not like pigs, hunting for
     truffles buried in briefs," United States v. Dunkel, 927 F.2d 955, 956 (7th
     Cir. 1991) (per curiam).

Memo. at 29 n.31 attached to Appellants' Br. (hereinafter "Memo").  Moreover, the Court
continued, the motion for qualified immunity focused on defendants' actions but failed to
address a number of the theories that plaintiffs were pursuing and, thus, even if
defendants' arguments insofar as they made them were correct, "it would not necessarily
justify a grant of qualified immunity . . . ."  Id. at 30-31.  It appears, therefore, that because
there was alleged but unaddressed wrongdoing, the District Court declined to find that
qualified immunity was in order.

     The Court, nonetheless, went on to review some of the facts elicited through

discovery and found, as to Sergeant Weston and Captain Schlegel, that the evidence was conflicting.

>    We begin with Sergeant Weston.  As defendants note, Sergeant Weston is not alleged to have physically assaulted Zagra or Freeman. However, he is the officer in charge of the K-9 units and it was he who gave the order for the K-9 units to charge the crowd, an order that precipitated the events at issue here.  On the conflicting evidence before us regarding the incident, we cannot conclude that these actions were objectively reasonable in view of the federal law surrounding the use of the police force.

>    Captain Schlegel's report of the incident states that because of the crowd's behavior at the game, he anticipated problems on the bridge.  To address his concern, he sent two additional K-9 units to the bridge to add to the three units who had previously been assigned to the bridge . . . Schlegel did not, however, assign any other officers to support the K-9 units, although he himself was later present on the bridge.  While on the bridge, he chased, tackled, and arrested plaintiff Freeman in part because he was displaying a bite on his leg, which Schlegel believed to demonstrate that Freeman had previously engaged in illegal activity.  Again, on the conflicted facts before us we cannot say that these acts were objectively reasonable.

Memo. at 31-32 n.34 (emphasis added).

The District Court, therefore, found genuine issues regarding facts that were material to determining whether Weston's and Schlegel's actions were objectively reasonable.  "Under Johnson v. Jones, supra, this is a question of evidentiary sufficiency that we may not address in this [collateral order] appeal."  Eddy, 256 F.3d at 211. As Justice Ginsburg put it, "if an excessive force claim turns on which of two conflicting stories best captures what happened on the street, Graham [v. Connor, 490 U.S. 386 (1989)] will not permit summary judgment in favor of the defendant official; . . . [A] trial must be had."  Saucier v. Katz, 121 S.Ct. 2151, 2164 (2001) (Ginsburg, J., concurring in

the judgment). We, therefore, dismiss the appeals of Weston and Schlegel for lack of jurisdiction and leave for trial the determination of whether their actions and/or inactions at the bridge on that Thanksgiving Day violated the Fourth Amendment rights of Ricker, Zagra, and/or Freeman by virtue of excessive force they themselves used, condoned, or ordered.

The appeals of Captain Zukasky, Chief Palmer, and Mayor Goldsmith stand on a different footing and are properly before us because summary judgment was not denied on the basis of conflicting evidence. Rather, summary judgment was denied as to them because, as noted earlier, all of the allegations of wrongdoing had not been addressed by these appellants and because, as to those allegations the Court discussed, qualified immunity, as a matter of law, was not warranted. We conclude that the District Court erred.

One or more of the appellees allege that, among other lesser wrongs, appellants Zukasky, Palmer, and Goldsmith encouraged or acquiesced in the K-9 Unit's unlawful conduct when one or more of them promoted Schlegel to captain despite his record of misconduct, assigned Remaley to the K-9 Unit despite his prior violent off-duty and on-duty episodes, conducted a superficial investigation of the bridge incident, and failed to reprimand the officers for their conduct in that incident. Zukasky, Palmer, and Goldsmith were not at the bridge on the day in question and liability is sought as to them because of acts they should or should not have taken in some sort of supervisory or policymaking capacity before and/or after the bridge incident.

A supervisor may be liable under 42 U.S.C.  1983 for his or her subordinate's unlawful conduct if he or she directed, encouraged, tolerated, or acquiesced in that conduct. Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001); Blanche Road Corp. v. Bensalem Twp., 57 F.3d 253, 263 (3d Cir. 1995); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). For liability to attach, however, there must exist a causal link between the supervisor's action or inaction and the plaintiff's injury. Brown, 269 F.3d at 216. "[I]t is not enough for a plaintiff to argue that the constitutionally

cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Rather, there must exist a close relationship between the supervisor's deficient conduct and the ultimate injury. City of Canton v. Harris, 489 U.S. 378, 391 (1989); Sample, 885 F.2d at 1118. In other words, the supervisor's acts must be the "moving force [behind] the constitutional violation." Harris, 489 U.S. at 389 (citations omitted). The supervisor must be directly and actively involved in the subordinate's unconstitutional conduct. Brown v.

Grabowski, 922 F.2d 1097, 1119-20 (3d Cir. 1990).

Zukasky, Palmer, and Goldsmith had no involvement in the K-9 officers' allegedly unconstitutional conduct on the bridge that day. Liability against Zukasky is asserted only by Freeman and is based solely on Zukasky's role in investigating the incident. Freeman alleges that the investigation was inadequate primarily because Zukasky did not question all of the possible witnesses and failed to use all of the police department's investigators, but does not explain how any of this resulted in or aggravated his injuries from dog bites. Moreover, even assuming, arguendo, that the K-9 officers were not disciplined as a result of Zukasky's investigation, that investigation did not in any way cause Freeman's injuries. Consequently, Zukasky was not a "moving force" behind those injuries, and no constitutional right of Freeman's was violated.

We reach the same conclusion as to Palmer and Goldsmith. The undisputed facts indicate that they knew about Schlegel's prior misconduct but nonetheless promoted him to Captain of Field Services. They also knew of Remaley's violent episodes but permitted him to be a member of the K-9 Unit. These acts are, as a matter of law, insufficient to constitute the requisite direct involvement in appellees' injuries. Moreover, there is no evidence indicating that Palmer and Goldsmith were aware of any previous mishandling of police dogs by the officers. In earlier years, the K-9 Unit had been deployed following the Thanksgiving football game without incident. Importantly, neither Palmer nor Goldsmith were aware of the attacks in question until after they

occurred.  At that time, they ordered an investigation but ultimately chose not to discipline the officers involved, even though it appears that Zukasky had recommended that at least certain of the officers be disciplined.  This decision not to discipline the officers does not amount to active involvement in appellees' injuries given that all of the injuries occurred before the decision.  There is simply no causal link between those injuries and what Palmer and Goldsmith did or did not do.

Because under the facts as appellees allege them to be there is, as a matter of law, an insufficient causal connection to appellees' injuries as against appellants Zukasky, Palmer, and Goldsmith, appellees have not alleged a violation of their constitutional rights, and those appellants' motion for summary judgment on the basis of qualified immunity should have been granted.

### III.  CONCLUSION

The appeals of Sergeant Weston and Captain Schlegel will be dismissed for lack of jurisdiction.  The order of the District Court will be reversed insofar as it denied summary judgment on the basis of qualified immunity to Captain Zukasky, Chief Palmer, and Mayor Goldsmith. The case will be remanded for further proceedings in accordance with this opinion.

TO THE CLERK OF THE COURT:
    Kindly file the foregoing Opinion.

/s/   Maryanne Trump Barry
Circuit Judge