**Keith A. ROSENBERG,**

v.

**Michael John VANGELO, Officer, Individually and in his Official Capacity as a Member of the Easton Police Department; Douglas S. Schlegel, Captain, Individually and in his Official Capacity as a Member of the Easton Police Department; Lawrence R. Palmer, Chief, Individually and in his Official Capacity as a Member of the Easton Police Department; Thomas F. Goldsmith, Mayor, Individually and in his Official Capacity as Mayor of the City of Easton; the City of Easton, Appellants.**

**374**

No. 02–2176.

United States Court of Appeals,
Third Circuit.

Argued June 30, 2003.
Decided March 12, 2004.

Andrea L. Bennett, Devlin & Devine, Conshohocken, PA, David J. MacMain, (Argued), Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Appellant.

John P. Karoly, Jr. (Argued), Law Offices of John Karoly, Allentown, PA, for Appellee.

Before SLOVITER, AMBRO and BECKER, Circuit Judges.

## OPINION OF THE COURT

AMBRO, Circuit Judge.

Following an incident in which he was injured by a police dog, Keith Rosenberg alleged multiple causes of action against a number of defendants, including the canine officer's supervisors. The supervisor defendants moved for summary judgment, arguing that Rosenberg cannot prove supervisory liability and, if he can do so, they are entitled to qualified immunity. The District Court denied their motion, and they have appealed. For the reasons that follow, we dismiss the appeal pertaining to supervisory liability for lack of appellate jurisdiction and affirm the District Court's denial of the request for qualified immunity.

## I. Factual & Procedural Background

On March 6, 1999, police officers in Easton, Pennsylvania, spotted and pursued an allegedly stolen vehicle in which Rosenberg was a passenger. Canine Officer Michael John Vangelo learned of the chase via radio and attempted to assist. The suspects' car stopped and its occupants fled on foot. Rosenberg ultimately ran into a dead-end alley.

The parties dispute the events that followed. According to Rosenberg, once he realized he had no escape, he dropped to his knees and placed his hands above his head. One of the pursuing officers arrived, pushed Rosenberg to the ground face first and handcuffed his wrists behind his back. Rosenberg alleges that at this time, after he already was restrained, Vangelo arrived on the scene and allowed his canine partner to bite Rosenberg. He also claims Vangelo's actions deviated from defined police procedures, and this was merely the latest in a series of similar instances of abuse involving Easton officers and their canines.

According to Vangelo, he first observed Rosenberg beginning to run from the stolen vehicle. Vangelo claims he exited his car and three times commanded Rosenberg to stop. When Rosenberg did not comply, Vangelo released his canine and instructed it to apprehend the suspect. The canine pursued Rosenberg into the alley, bit him in the left shoulder, brought him to the ground and held him there until the trailing officers caught up. At this point Vangelo ordered the dog off Rosenberg, who was then handcuffed and taken into custody. Rosenberg sustained puncture wounds to his left shoulder from the dog bite and cuts to his left eye area.

Rosenberg filed suit in Pennsylvania state court against Vangelo; Douglas D. Schlegel, a Captain of the Easton Police Department; Lawrence R. Palmer, Chief of the Easton Police Department; and Thomas F. Goldsmith, Mayor of Easton (collectively, the "Supervisor Defendants"); and the City of Easton. Rosenberg's complaint alleged five causes of action: civil rights violations pursuant to 42 U.S.C. § 1983 against all defendants (Count I); intentional infliction of emotional distress

against all defendants (Count II); assault and battery against Vangelo (Count III); negligent infliction of emotional distress against all defendants (Count IV); and negligence against all defendants (Count V).

The defendants removed the case to the United States District Court for the Eastern District of Pennsylvania and filed a motion under Fed.R.Civ.P. 12(b)(6) to dismiss Count II as to the City of Easton and Count IV as to all defendants. The District Court dismissed only the intentional infliction of emotional distress claim (Count IV) against the City.

The Supervisor Defendants then moved for summary judgment on Count I—arguing Rosenberg cannot establish supervisory liability or, assuming otherwise, they are entitled to qualified immunity—and all defendants moved for summary judgment on Counts II and IV. The District Court granted the motion as to Count II (intentional infliction of emotional distress), but denied it as to all other counts. *Rosenberg v. Vangelo*, No. 01–2514, 2002 WL 576109 (E.D.Pa. Apr. 18, 2002).

The Supervisor Defendants timely appealed the District Court's denial of summary judgment on Count I. Thus, the only appellants before us are the Supervisor Defendants and the only issue is whether they are liable for Rosenberg's claim under § 1983.

## II. Analysis

At the outset we note that the parties have made little effort to establish the propriety of jurisdiction in our Court. The Supervisor Defendants' statement of jurisdiction, in its entirety, is as follows: "The United States Court of Appeals for the Third Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, under the collateral order doctrine." Appellants' Br. at 1 (citing *Pro v. Donatucci*, 81 F.3d 1283, 1285 (3d Cir.1996); *Mellott v. Heemer*, 161 F.3d 117, 121 (3d Cir.1998)). Rosenberg's brief merely repeats the same statement and citations. Appellee's Br. at 1. Although all parties may agree the collateral order doctrine applies, "we have an 'independent obligation to examine our own jurisdiction sua sponte.' " *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 88 (3d Cir.2002) (quoting *In re Ford Motor Co.*, 110 F.3d 954, 958–59 (3d Cir.1997)).

The Supervisor Defendants offer two general arguments on appeal: (1) they are entitled to judgment as a matter of law because their acts or omissions do not rise to the level required to impose supervisory liability for the alleged acts of Vangelo; and (2) even assuming supervisory liability can be established, summary judgment should be granted in their favor because they enjoy qualified immunity.

### A. Supervisory Liability

▪ Our analysis of whether we have jurisdiction to consider the Supervisor Defendants' first argument—that the District Court erred in denying their motion for summary judgment on Rosenberg's claim for supervisory liability under § 1983—is relatively straightforward. The District Court found that genuine issues of material fact existed in regard to (1) the Supervisor Defendants' knowledge of past incidents involving dog attacks and (2) their failure to correct the problem through effective training or discipline. *Rosenberg*, 2002 WL 576109 at *2–3. On appeal, the Supervisor Defendants argue that Rosenberg failed to present evidence of a sufficient causal connection between his injuries and their actions or inaction. We lack jurisdiction to consider this argument, however, because the District Court's denial of summary judgment is not an appealable collateral order.

Under 28 U.S.C. § 1291, we are authorized to hear appeals of "final decisions" of district courts. The denial of a motion for summary judgment, permitting an issue to go to trial, generally is not considered a final order. *Hamilton v. Leavy*, 322 F.3d 776, 781–82 (3d Cir.2003); *Eddy v. Virgin Islands Water & Power Auth.*, 256 F.3d 204, 208 (3d Cir.2001). But some collateral orders operate as final decisions and thus are immediately reviewable. *Eddy*, 256 F.3d at 208. To establish appellate jurisdiction under this principle (known as the collateral order doctrine), an appellant must demonstrate a district court's ruling (1) conclusively determined a disputed question, (2) resolved an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment. *Hamilton*, 322 F.3d at 782; *Eddy*, 256 F.3d at 208; *see also Johnson v. Jones*, 515 U.S. 304, 310, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

The Supervisor Defendants' argument fails to satisfy any of the collateral order doctrine's requirements. The District Court did not conclusively rule on the issue, which is completely intertwined with, not separate from, the merits of the underlying action. And the claim is reviewable on appeal. As we have recognized, "the collateral order doctrine does not permit an appeal from an order denying a motion for summary judgment if the issue raised is 'whether or not the evidence in the pretrial record [is] sufficient to show a genuine issue of fact for trial.'" *Ziccardi v. City of Phila.*, 288 F.3d 57, 60 (3d Cir.2002) (quoting *Johnson*, 515 U.S. at 307).

**B. Qualified Immunity**

Our analysis of the Supervisor Defendants' second argument on appeal—that they are entitled to qualified immunity from Rosenberg's suit—is more complex. Unfortunately, this stems largely from the Supervisor Defendants' incomplete understanding of both the collateral order doctrine and qualified immunity. After discussing the relevant legal standards, we address each argument made by the Supervisor Defendants, as we understand them, in turn.

*1. Relevant Legal Standards*

A pretrial order rejecting a motion for summary judgment based on a qualified immunity defense has been recognized by the Supreme Court as properly reviewable on interlocutory appeal. *Eddy*, 256 F.3d at 208 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). A "denial of qualified immunity falls within the collateral-order doctrine only to the extent the denial turns on an issue of law." *In re Montgomery County*, 215 F.3d 367, 373 (3d Cir.2000) (citing *Johnson*, 515 U.S. at 313). If we do have jurisdiction, our review of an order rejecting qualified immunity is plenary. *Eddy*, 256 F.3d at 208.

The qualified immunity analysis involves a multi-part inquiry. First, a plaintiff's allegations must sufficiently establish the violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). Second, the right allegedly violated must be clearly established such that a reasonable person would have been aware of it. *Id.* at 201–02 (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In this regard, a court must determine whether the defendant's actions were objectively reasonable under current federal law. *Gruenke v. Seip*, 225 F.3d 290, 298–

99 (3d Cir.2000).[1] The burden is on the Supervisor Defendants, however, to establish that they are entitled to qualified immunity. *Beers–Capitol v. Whetzel*, 256 F.3d 120, 142 n. 15 (3d Cir.2001) (citation omitted).

### 2. Violation of a Constitutional Right

■ The Supervisor Defendants first claim that Rosenberg has failed to allege the violation of a constitutional right. They do not, however, make any legal arguments. Instead, the Supervisor Defendants merely reference their previous discussion that Rosenberg has failed to allege facts sufficient to establish supervisory liability.[2] The difficulty with the argument of the Supervisor Defendants is that the facts in this case are disputed, and we are unwilling to hold as a matter of law that Rosenberg cannot establish supervisory liability should the facts be as he alleges.

■ Similarly, the Supervisor Defendants argue a reasonable supervisor could have believed that his conduct comported with established legal standards. In other words, a reasonable supervisor could have believed "he was not being deliberately indifferent to the existence of an excessive risk to plaintiff of an intentional dog bite." Appellant's Brief at 20. This argument at least appears to be relevant to the qualified immunity inquiry. But once again, it is an argument that posits disputed facts, precisely why we have trials.

### 3. Challenging the "Deliberate Indifference" Standard

Finally, the Supervisor Defendants argue that, even assuming Rosenberg proves a violation of a constitutional right, this right was not clearly established. Specifically, they allege that the District Court's conclusion—that only deliberate indifference, and not direct and active involvement, is necessary to establish supervisory liability, *Rosenberg*, 2002 WL 576109 at *3—does not reflect clearly established law. Citing *Brown v. Grabowski*, 922 F.2d 1097, 1119 (3d Cir.1990), the Supervisor Defendants claim that supervisory liability requires a supervisor's "direct and active involvement" in the subordinate's constitutional violation. Further, this standard was recently cited with approval in a not precedential opinion of our Court. *See Ricker v. Weston*, 27 Fed.Appx. 113, 119 (3d Cir.2002). Therefore, the Supervisor Defendants claim the proper standard remains unclear.

■ This argument misses the mark because it is Rosenberg's right that must be clearly established (or shown not to be clearly established by the Supervisor Defendants), not the standard to impose supervisory liability. To the extent the Supervisor Defendants fail to address the

---

1. We acknowledge that qualified immunity is an abstract and difficult doctrine. In this regard, the "clearly established" and "objectively reasonable" standards are sometimes discussed as two characterizations of the same inquiry, but sometimes they appear to be two completely distinct inquiries. *See Gruenke*, 225 F.3d at 299.

2. As to whether Rosenberg has alleged the violation of a constitutional right, the Supervisor Defendants are making the wrong argument. As Judge Becker noted at oral argument, the issue of supervisory qualified immunity is whether the plaintiff was entitled to be free from being bitten by a canine controlled by a police officer who was being supervised by a deliberately indifferent supervisor. The threshold question is not whether the plaintiff has alleged a causal connection between his/her injuries and the supervisors' alleged failure to train, it is do the facts alleged show the supervisors' conduct violated the plaintiff's right under the Fourth and Eighth Amendments to the Constitution not to be attacked by a police dog.

issue, therefore, their claim for qualified immunity fails *ipso facto*. *Beers–Capitol,* 256 F.3d at 142 n. 15.

Giving the Supervisor Defendants the benefit of the doubt, however, one could construe their argument as addressing qualified immunity. "[I]t is not sufficient that the right at issue be clearly established as a general matter. Rather, the question is whether a reasonable public official would know that his or her specific conduct violated clearly established rights." *Grant v. City of Pittsburgh,* 98 F.3d 116, 121 (3d Cir.1996) (citing *Anderson v. Creighton,* 483 U.S. 635, 636–37, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). One could argue that if supervisory liability does not attach until the Supervisor Defendants directly and actively caused the harm suffered by Rosenberg, and if there is no evidence that they were directly and actively involved, then reasonable persons in their positions would not have known their conduct was violating a clearly established right. To the extent this argument turns on an issue of law, we have jurisdiction to consider it under the collateral order doctrine. *In re Montgomery County,* 215 F.3d at 373 (citing *Johnson,* 515 U.S. at 313).

But even if the argument favors jurisdiction, the Supervisor Defendants are not entitled to qualified immunity. Their reliance on *Grabowski* and *Ricker* is misplaced for several reasons. *Ricker* is a not-precedential opinion, and we are not bound to follow it. Also, *Grabowski* addresses a unique factual situation. Although the case was decided in 1990, its events occurred in 1985. In discussing qualified immunity in the context of supervisor liability, *Grabowski* noted that the district court failed to consider relevant precedent *at the time the events in that case occurred.* 922 F.2d at 1119–20. Direct and active involvement was required

to establish supervisory liability in 1985—see *Rizzo v. Goode,* 423 U.S. 362, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Pennsylvania v. Porter,* 659 F.2d, 306, 336 (3d Cir.1981)—and *Grabowski* held qualified immunity was called for because no evidence existed of the defendants' direct and active involvement. *Grabowski,* 922 F.2d at 1119–20.

We were careful to recognize, however, that direct and active involvement was no longer the applicable legal standard in 1990 when *Grabowski* was decided. *Id.* at 1120 n. 16. For in 1989 the Supreme Court concluded that a municipality's failure to train police officers may give rise to § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). We followed suit that same year when a plaintiff sought to impose individual liability on supervisory public officials. *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir.1989). Deliberate indifference continues to be the applicable standard for supervisory liability. *See, e.g., Brown v. Muhlenberg Township,* 269 F.3d 205, 216 (citing and quoting *Sample,* 885 F.2d at 1118).

In light of this analysis, we respectfully disagree with the *Ricker* Court's decision to cite and rely on the "direct and active" language from *Grabowski.* We also conclude that the deliberate indifference standard had been clearly established prior to 1999 and no reasonable official could claim a higher showing would be required to establish supervisory liability. Therefore, any claim to qualified immunity based on an attack against the deliberate indifference standard fails.

\* \* \* \* \* \*

For the reasons stated, we dismiss for lack of jurisdiction the portion of the Su-

pervisor Defendants' appeal concerning supervisory liability, and affirm the District Court's order denying summary judgment on the qualified immunity defense.