**Albert BROWN, Plaintiff,**

v.

**Randolph PFAFF, Defendant.**

**No. CIV.03–404–SLR.**

United States District Court, D. Delaware.

Feb. 15, 2005.

Albert Brown, Howard R. Young Correctional Facility, Wilmington, DE, Pro Se.

Rosamaria Tassone, Assistant City Solicitor, City of Wilmington Law Department, Wilmington, DE, Counsel for Defendant.

### MEMORANDUM OPINION

ROBINSON, Chief Judge.

### I. INTRODUCTION

On April 18, 2003, *pro se* plaintiff Albert Brown filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants Thomas Looney, Randolph Pfaff and the Wilmington Police Department utilized excessive force while arresting him on May 23, 2002. (D.I. 37 at 1,2) Plaintiff seeks compensation in the amount of ten million dollars for physical injuries sustained to his right leg and head, future medical expenses, loss of earning capacity, mental anguish and pain and suffering. (D.I.10,

35) On October 20, 2003, defendants filed a motion to dismiss or in the alternative for summary judgment which was granted on March 3, 2004, as to defendants Thomas Looney and the Wilmington Police Department. (D.I.16, 28)

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Presently before the court is defendant Randolph Pfaff's motion for summary judgment. (D.I.36) For the reasons discussed below, the court shall grant defendant's motion.

### II. BACKGROUND

#### A. Plaintiff's Arrest

On May 23, 2002, at approximately 2:11 p.m., defendant Detective Randolph Pfaff ("Pfaff") assisted in the execution of a valid search warrant at 709 North Jefferson Street, Wilmington, Delaware. (D.I. 38 at A–5) Pursuant to standard police procedures, defendant Pfaff breached the front door of the residence when the occupants failed to respond to the officers' knock and announcement. As defendant Pfaff and accompanying officers were hitting the front door, officers from the Criminal Investigations Unit were moving into position to secure the rear door of the home. (D.I. 37 at 2)

When the crash of the front door was heard, plaintiff and another individual were observed, by the Criminal Investigations Unit officers, running out the back door of 709 North Jefferson Street. (*Id.*) Plaintiff climbed over a fence and ran into an alley located between the residences. Detective Donovan, one of the officers assigned to cover the rear of the property, pursued plaintiff down the alleyway. (D.I. 38 at A–58)

Defendant Pfaff heard over radio transmissions that a subject was "exiting and running out the back of the residence,"

that the suspect "may be armed" and "that the subject was running up and back towards the front of the residence." (D.I. 38 at A–56) Upon hearing this, defendant Pfaff stepped out of 709 North Franklin Street and observed plaintiff run out of the alleyway and slow to a walk. Detective Donovan exited the alley shortly behind him, pointed to plaintiff and directed the officers to "take that man into custody." (D.I. 38 at A–56)

Believing plaintiff to be armed, defendant Pfaff (along with another officer) grabbed hold of plaintiff and forced him to the ground. Defendant Pfaff secured plaintiff's arms and a silver watch was found clutched in his hand. (D.I. 38 at A–151) Plaintiff was then handcuffed and turned over to the K–9 officers, while defendant Pfaff further assisted in the execution of the warrant. Plaintiff did not have any visible signs of injury nor did he request medical attention.

Plaintiff disputes defendant Pfaff's characterization of the arrest. Plaintiff asserts that he was walking eastbound on Eighth Street, unaware of any police activity on the 700 block of North Franklin Street. (D.I. 38 at A–126) As he approached 711 North Franklin Street, he saw people assembled outside the residence and began to cross the street when he was approached by two detectives. The detectives asked plaintiff to place his hands on the hood of a nearby car where they conducted a search of plaintiff. No illegal substances were found. However, the detectives took the plaintiff's wallet and a silver watch that was in his left hand. (*Id.*)

Plaintiff claims that he was in the "spread eagle" position in compliance with the detectives' orders when defendant Pfaff approached him with a gun drawn. (*Id.*) Defendant Pfaff then "slammed plaintiff on the ground, causing plaintiff to hit his head on the ground, then began kicking plaintiff in [the] lower parts of [his] body, then dragged him across the concrete, placed his head against the hot ground and said 'Nigger don't move or the dog will bite you.'" (D.I. 38 at A–126)

On January 31, 2003, following a trial in the Superior Court of New Castle County, plaintiff was found guilty of resisting arrest and possession of marijuana. Plaintiff also pled guilty to possession of drug paraphernalia. (D.I. 28 at 2) On April 18, 2003, plaintiff filed a complaint against defendant Pfaff, Detective Thomas Looney and the Wilmington Police Department alleging excessive force was used to arrest him. (D.I.2) Plaintiff claims that, as a result of the excessive force, his right leg is permanently disfigured and he suffers from recurring headaches. (*Id.*)

## B. Procedural Background

On October 20, 2003, defendants Pfaff, Looney and the Wilmington Police Department, collectively, filed a motion to dismiss or in the alternative for summary judgment stating that: (1) the force used by defendant Pfaff in effectuating the arrest was objectively reasonable; (2) Detective Looney was not physically present during the execution of the search warrant or plaintiff's arrest; and (3) defendants enjoy qualified immunity. (D.I.16) In response, plaintiff asserted that a witness and his medical records at Gander Hill Correctional Facility would support his allegation that defendant Pfaff beat, kicked, and dragged him across the ground, causing a permanent disfigurement to his right leg and constant headaches. (D.I.23) The motion was granted on March 6, 2003, as to Thomas Looney and the Wilmington Police Department, and denied pending discovery as to defendant Pfaff. (D.I.18)

## C. Parties' Contentions

On August 5, 2004, upon completion of discovery, defendant Pfaff filed the instant

motion for summary judgment alleging that: (1) the force utilized was objectively reasonable in light of the totality of the circumstances; and (2) he is entitled to qualified immunity. (D.I.36) Defendant Pfaff claims that after sufficient time for discovery, the evidence still does not support plaintiff's contentions.

Defendant Pfaff argues that none of the officers present at the time of plaintiff's arrest observed "any officer strike, kick, drag, or use any departmental equipment in effecting plaintiff's arrest." (D.I. 38 at A–154,6) In addition, in response to defendant Pfaff's interrogatories requesting the names, addresses, and telephone numbers of all eyewitnesses or persons with direct knowledge of the arrest, plaintiff stated that due to his incarceration, he did not have access to that information nor could he personally contact them. (D.I. 38 at A–133)

Further, defendant Pfaff claims that the officers on the scene did not "observe any visible signs of injury to plaintiff" nor did they "hear plaintiff complain of any injuries." (*Id.*) He also argues that on May 24, 2002, one day after his arrest, plaintiff underwent a medical examination which failed to reveal any injury to plaintiff's right leg or head. Similarly, plaintiff did not complain of any medical problems, such as bleeding, injuries, bruises, or head trauma which required medical attention at that time. (D.I. 38 at A–79,80)

In response, plaintiff contends that the radio transmissions defendant Pfaff relies upon are fabricated. Plaintiff claims that there were no transmissions indicating that the "suspect is running eastbound" and that the "armed suspect" call referred to another individual and was transmitted after plaintiff was in custody. (D.I. 43 at 3) Lastly, plaintiff argues that the signatures on the affidavits of defendant Pfaff, Thomas Looney, Donna L. Kellam, and Anne S. Herrell were forged by Deputy Attorney General Cynthia Kelsey and are invalid. (D.I. 40 at 1)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case

with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

### A. Excessive Force

■■■ Plaintiff alleges that defendant's use of excessive force during his arrest was a violation of his Fourth Amendment rights. The Fourth Amendment and its "reasonableness" standard should be used to analyze all claims which allege that law enforcement officers have used excessive force in the course of an arrest of a free citizen. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Fourth Amendment's reasonableness standard is "not capable of precise definition or mechanical application." *Id.* at 396, 109 S.Ct. 1865 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). The reasonableness test requires careful analysis of the "facts and circumstances of each particular case, including . . . whether the suspect poses an immediate threat to officer safety and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Police officers are permitted to use a reasonable amount of force to effect an arrest; the degree of force is dictated by the suspect's behavior. *See id.* The reasonableness of force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

■■■ The question to be answered is "whether the officers' actions were 'objectively reasonable' in light of the specific facts and circumstances confronting them [at that particular moment, regardless] of their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865 (citing *Scott v. United States*, 436 U.S. 128, 137–139, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)); *see also Terry*, 392 U.S. at 21, 88 S.Ct. 1868. "An officer with evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.*

Here, plaintiff has not presented sufficient evidence from which a reasonable juror could conclude that defendant Pfaff's use of force during plaintiff's arrest was objectively unreasonable. Plaintiff was evading police custody. He fled the scene of a search warrant and was not "tackled" until he was identified as the suspect by the officer pursuing him.

Additionally, several radio transmissions are clearly contrary to plaintiff's contentions. For instance, transmissions stated that the suspect is "walking southbound, white T-shirt," "he crossed the street, he's on the other side," and "white T-shirt, he's coming out the alley." (D.I. 38 at A–13) These accounts corroborate both parties' characterization of the events. "The suspect may be armed" transmission was made in reference to the suspect on the roof, however, this must be viewed in context, absent hindsight. (*Id.*) The radio transmissions indicate that the scene was chaotic, officers were hollering, voices were muffled. (D.I. 38 at A–13) It was reasonable for defendant Pfaff to believe that if one of the suspects was armed so was the other, that the transmission referred to plaintiff, or that the silver watch found in plaintiff's hand was a weapon. Defendant Pfaff proceeded consistent with his own personal safety, as well as that of the other police officers and the crowd of onlookers that had assembled.

Lastly, plaintiff was not bleeding, bruised nor did he complain of any injuries at the scene of the arrest or during his medical examination the following day; this also substantiates a finding that the force was minimal.

Based on these circumstances, the court concludes that a reasonable jury could not find the force utilized by defendant Pfaff in effectuating plaintiff's arrest unreasonable; therefore, summary judgment is warranted.

## B. Qualified Immunity

 The doctrine of qualified immunity protects government officials from liability for civil damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The "contours of the right [the official is alleged to have violated] must be sufficiently clear so that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. "[I]n the light of pre-existing law, the right must be apparent." *Id.* Whether an official is protected by qualified immunity generally turns on the objective legal reasonableness of the action. *Id.* at 639, 107 S.Ct. 3034. The court's inquiry into qualified immunity is primarily legal—whether the legal norms allegedly violated were clearly established—but some fact-specific inquiry into the defendant's actions is required. *Gruenke v. Seip,* 225 F.3d 290, 299 (3d Cir.2000). When looking at the facts, the key question is "whether a reasonable public official would know his or her specific conduct violated clearly established rights." *Id.* (citing *Grant v. City of Pittsburgh,* 98 F.3d 116, 121 (3d Cir.1996)). After a defendant properly raises qualified immunity in his or her defense at the summary judgment stage, the burden is on the plaintiff to produce evidence sufficient to create a genuine issue of material fact whether defendant engaged in conduct alleged to have violated a clearly established right. *Brown v. Grabowski,* 922 F.2d 1097, 1111 (3d Cir.1990).

The Supreme Court established the objective test for qualified immunity in *Harlow* to allow insubstantial claims to be resolved at the summary judgment stage. *Anderson,* 483 U.S. at 640 n. 2, 107 S.Ct. 3034. In a recent decision, the Court reemphasized that qualified immunity is designed to protect the official from the litigation itself. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2155–56, 150 L.Ed.2d 272 (2001). The Court explained that qualified immunity is an immunity from suit, not just a defense to liability, so whether qualified immunity exists must be resolved at the earliest possible stage. *Id.* at 2156. It then carefully distinguished between the "reasonableness" inquiry for qualified immunity from the "reasonableness" inquiry that is part of determining whether excessive force was used, emphasizing that these were separate inquiries. *Id.* at 2156. The Court found that to deny summary judgment any time a material issue of fact remained on an excessive force claim could undermine the goal of qualified immunity to resolve insubstantial claims on summary judgment. *Id.*

In the case at hand, plaintiff has failed to produce sufficient evidence to create a genuine issue of material fact as to whether the force utilized by defendant Pfaff was unreasonable under the totality of the circumstances. In addition, defendant Pfaff has adduced evidence of record supporting the contention that he reasonably believed his conduct comported with clearly established law; facing a suspect who fled the scene of a search warrant and was potentially armed, a reasonable officer

could believe that the force used by defendant Pfaff was necessary to subdue and arrest plaintiff. Accordingly, defendant Pfaff's motion for summary judgment is granted.

## IV. CONCLUSION

For the reasons stated above, the court will grant defendant Pfaff's motion for summary judgment. An order consistent with this opinion shall issue.