

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-18-1996

# Grant v. City of Pittsburgh

Precedential or Non-Precedential:

Docket 95-3599,95-3600

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Grant v. City of Pittsburgh" (1996). *1996 Decisions.* Paper 55.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/55

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 95-3599 and 95-3600


WILLIAM GRANT; IKE HARRIS; AMBASSADOR DEVELOPMENT
CORPORATION; LAZER DEVELOPMENT GROUP, INC.;
THE ASPEN GROUP

v.

CITY OF PITTSBURGH; EUGENE RICCIARDI; JACK WAGNER;
JAMES FERLO; DANIEL COHEN; MICHELLE MADOFF;
DUANE DARKINS; BERNARD REGAN; PITTSBURGH CITY COUNCIL;
CITY OF PITTSBURGH PLANNING COMMISSION;
CITY OF PITTSBURGH HISTORIC REVIEW COMMISSION;
JANE DOWNING; THOMAS W. ARMSTRONG; JOHN DESANTIS;
MICHAEL EVERSMEYER; JOHN RAHAM; THE SOUTH SIDE PLANNING
FORUM; THE SOUTH SIDE LOCAL DEVELOPMENT CO.;
THE SOUTH SIDE COMMUNITY COUNCIL OF PITTSBURGH, INC.;
THE BRASHEAR ASSOCIATION; SOUTH SIDE ANTIQUES;
ARTS & CRAFAX ASSOCIATION; GERALD MOROSCO; REBECCA FLORA;
CYNTHIA ESSER; JOHN A. JOHNSTON; HUGH J. BRANNAN, III;
THOMAS TRIPOLI; PRIVATE PARTY DEFENDANTS

CITY OF PITTSBURGH; EUGENE RICCIARDI;
JACK WAGNER, JAMES FERLO; DANIEL COHEN;
MICHELLE MADOFF; DUANE DARKINS (deceased);
BERNARD REGAN (deceased); PITTSBURGH CITY
COUNCIL; CITY OF PITTSBURGH PLANING
COMMISSION; CITY OF PITTSBURGH HISTORIC
REVIEW COMMISSION; JANE DOWNING;
THOMAS W. ARMSTRONG; JOHN DeSANTIS;
MICHAEL EVERSMEYER and JOHN RAHAIM,
Appellants


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 92-cv-01837)


Argued July 17, 1996

BEFORE: SLOVITER, Chief Judge, COWEN and ROTH
Circuit Judges

(Filed October 18, 1996)

George R. Specter
City of Pittsburgh
Department of Law
313 City County Building
Pittsburgh, PA  15219

Joseph E. Linehan (argued)
Kevin F. McKeegan
Meyer, Unkovic & Scott
1300 Oliver Building
Pittsburgh, PA  15222

            COUNSEL FOR APPELLANTS

Charles H. Saul (argued)
Rosenberg & Kirshner
1500 Grant Building
Pittsburgh, PA  15219

Edwin J. Strassburger
Strassburger, McKenna, Gutnick & Potter
322 Boulevard of the Allies
Suite 700
Pittsburgh, PA  15222

            COUNSEL FOR APPELLEES

                         OPINION


COWEN, Circuit Judge.
        The question presented in this appeal is whether the
district court properly applied the test set forth by the Supreme
Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727
(1982), as refined by Anderson v. Creighton, 483 U.S. 635, 107 S.
Ct. 3034 (1987), in denying summary judgment to twelve individual
defendants on qualified immunity grounds.  Specifically, we must
determine whether the district court improperly failed to analyze
separately the specific conduct of each defendant in the context of
determining whether plaintiffs had adduced evidence sufficient for
a factfinder to conclude that a reasonable public official would
have known that his or her conduct had violated clearly established
constitutional rights.  Because we conclude that the district
court's analysis was deficient, we will remand to the district
court for a redetermination of the qualified immunity issue as to
each individual City Defendant under the proper legal standard.  We
also clarify the extent to which courts, in resolving qualified
immunity on summary judgment, should consider the motivations of
public officials when those motivations are an essential element of
the underlying substantive constitutional claim.
                             I.

The instant civil rights action arises out of actions taken by certain public officials in the City of Pittsburgh, primarily members of the City Council, Historic Review Commission and Planning Commission ("City Defendants"), and certain private individuals and organizations, in nominating two buildings for historic preservation under Pittsburgh's Historic Structures, District, Sites and Objects Ordinance. Pittsburgh, Pa., Code Title 1007, § 513. That nomination prevented the buildings from being demolished and, thereby, thwarted plaintiffs William Grant's and Ike Harris' plans to develop the property on which the buildings were located. Claiming to have lost $400,000 due to the nomination, Grant sought protection under Chapter Eleven of the Bankruptcy Code.

On August 24, 1992, Grant and Harris filed a complaint in the District Court for the Western District of Pennsylvania, which was subsequently twice amended, alleging violations of their rights to equal protection of the laws, procedural and substantive due process, and asserting various theories of recovery under Pennsylvania common law. They alleged, inter alia, that in acting upon the proposed nomination, the City Defendants were motivated not by the public interest but by partisan political or personal reasons having nothing to do with historic preservation. Specifically, the district court characterized the plaintiffs' allegations in the following manner:

> Plaintiffs' central theory of the case is that the private party defendants and the city defendants orchestrated a scheme to thwart plaintiffs' project in order to keep the mayoral administration from receiving credit in the upcoming election for the project's projected economic revenue and jobs and to assure that the property was developed by a local developer.

Grant v. City of Pittsburgh, No. 92–CV–1837, slip op. at 24–25 (W.D. Pa. Sept. 28, 1995).

The City Defendants initially moved to dismiss Grant's complaint and amended complaint under Fed. R. Civ. P. 12(b)(6), raising among other issues the defense of qualified immunity. On August 17, 1993, the district court issued an opinion and order granting in part and denying in part the City Defendants' motion; the district court rejected their claim of qualified immunity, and the City Defendants did not appeal that decision. After engaging in considerable pretrial discovery, all defendants subsequently moved for summary judgment, claiming that the plaintiffs' evidence failed to demonstrate a disputed issue of material fact on liability. Additionally, the City Defendants moved for summary judgment on the issue of qualified immunity.

On September 28, 1995, the district court issued an opinion and order granting summary judgment to the City Defendants on all theories of liability except substantive due process. As to that theory of recovery, the district court stated that "[t]he instant record contains sufficient evidence from which the finder of fact could conclude that defendants' actions were undertaken for

improper political motives and partisan political reasons." Id. at 40. The court then cited evidence in the record suggesting that some City Defendants may have acted for improper purposes. The district court did not address the qualified immunity issue.

The City Defendants therefore filed a motion requesting that the district court clarify its summary judgment ruling with respect to the issue of qualified immunity. Approximately three weeks after handing down its summary judgment ruling, the district court granted the City Defendants' motion for clarification, but denied their claims of qualified immunity, ruling as follows:

> Here, the substantive due process rights allegedly violated by the City [D]efendants clearly were established at the time of the alleged violation. . . . At the time of the alleged violation, it was well-settled in this jurisdiction that the arbitrary and capricious application of applicable law by an administrative body violates an individual's substantive due process rights. Accordingly, a reasonably competent public official would have known that the alleged conduct violated Grant's and Harris' substantive due process rights. In addition, plaintiffs have produced affirmative evidence sufficient to create a genuine issue of material fact as to whether each City [D]efendant knowingly violated Grant and Harris' substantive due process rights by assisting in the administration of the relevant ordinances for political or personal motives unrelated to the merits of the matter under consideration.

Grant v. City of Pittsburgh, No. 92-CV-1837, slip op. at 3-4 (W.D. Pa. Oct. 16, 1995) (citations omitted). This appeal followed.

II.

A.

The district court had subject-matter jurisdiction over plaintiffs' civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). To the extent that they turn on an issue of law, decisions denying public officials qualified immunity are considered final under the collateral order doctrine recognized in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S. Ct. 1221 (1949). See Mitchell v. Forsyth, 472 U.S. 511, 105 S. Ct. 2806 (1985); see also Johnson v. Jones, ___ U.S. ___, 115 S. Ct. 2151 (1995). Because the question whether the district court applied the correct legal standard is purely one of law, we exercise appellate jurisdiction under 28 U.S.C. § 1291.

B.

Plaintiffs contend, however, that the City Defendants' failure to appeal from the district court's denial of their Rule 12(b)(6) motion, insofar as it rejected their claim of entitlement to qualified immunity, somehow divests us of our appellate jurisdiction. Plaintiffs' contention is essentially that a party is not entitled to appeal the denial of a motion for summary

judgment where that motion raises the same legal arguments as a prior motion to dismiss, and where that party has failed timely to appeal the denial of the prior motion. This argument is without merit.

Plaintiffs cite three cases to support this proposition. The first of those, Kenyatta v. Moore, 744 F.2d 1179 (5th Cir. 1984), is inapposite. In that case, the defendants had made two motions for summary judgment that were both denied, the first based on absolute immunity and the second, made several years later, based on qualified immunity. See id. at 1181-82. The bulk of the court's opinion is concerned with rejecting the defendants' argument that the later ruling, on qualified immunity, is appealable on an interlocutory basis pursuant to the collateral order doctrine (Defendants' position ultimately was embraced, of course, by the Supreme Court in Mitchell, 472 U.S. at 530, 105 S. Ct. at 2817). See id. at 1182-86. In the remainder of the opinion, the court rejected the defendants' argument that they could appeal the denial of the earlier motion, even though that appeal would otherwise be untimely, on the ground that interlocutory appeals are not governed by the time provisions of Fed. R. App. P. 4. See id. at 1186-87. Nowhere in that opinion does the court intimate that it did not have jurisdiction over the later ruling because the defendants had failed to appeal the earlier ruling. Indeed, the case would be an inappropriate vehicle for such a holding because the two rulings addressed different legal theories.

In Taylor v. Carter, 960 F.2d 763, 764 (8th Cir. 1992), also cited by the plaintiffs, the defendants had attempted to appeal from the denial of a motion for summary judgment that had been made subsequent to a prior unsuccessful summary judgment motion based on the same legal grounds, and had failed to appeal the denial of the prior motion. No such successive Rule 56 motions are at issue here.

In the third case cited by the plaintiffs, Armstrong v. Texas State Bd. of Barber Examiners, 30 F.3d 643, 644 (5th Cir. 1994), the defendants had filed a motion to dismiss, which was denied, and the defendants declined to appeal. The defendants subsequently filed a motion for summary judgment, but that motion was brought before discovery had been completed and the motion relied on no material outside the pleadings. See id. The Court of Appeals for the Fifth Circuit concluded that, although "brought under different rules and . . . guided by different standards of review," the two motions were functionally equivalent to one another because both were addressed solely to the pleadings and both raised the same legal arguments. Id. The court concluded that "[u]nder these unique circumstances" where "the two motions are substantially the same," it would not allow an appeal of a denial of the second motion. Id.

Assuming without deciding that we would agree with the Fifth Circuit's analysis in Armstrong in an appropriate case, the "unique circumstances" identified in that case do not exist here. The motion for summary judgment in this case differed from the motion to dismiss in more than name only. Though both relied on the same legal theory (qualified immunity), the second motion did

not merely address the pleadings but also relied on matters obtained during extensive discovery. Thus, the two motions are not "substantially the same," and the City Defendants' failure to appeal the denial of their Rule 12(b)(6) motion does not prevent this Court from exercising jurisdiction over their appeal from the denial of their Rule 56 motion.

This conclusion is bolstered by the Supreme Court's decision last Term in Behrens v. Pelletier, ___ U.S. ___, 116 S. Ct. 834 (1996). In Behrens, unlike this case, the defendants hadunsuccessfully appealed the district court's denial of their Rule 12(b)(6) motion on qualified immunity grounds. When they took a subsequent appeal from the district court's later denial of their motion for summary judgment on qualified immunity grounds, the Court of Appeals for the Ninth Circuit dismissed the appeal for lack of appellate jurisdiction. Reversing, the Supreme Court held that "Mitchell clearly establishes that an order rejecting the defense of qualified immunity at either the dismissal stage or the summary-judgment stage is a 'final' judgment subject to immediate appeal." Id. at ___, 116 S. Ct. at 839.

Although stated in terms of finality rather than timeliness, Behrens' holding, that a defendant who raises the defense of qualified immunity at both the dismissal and summary judgment stage of the proceedings is entitled to appeal adverse rulings each time, indicates a fortiori that there is nothing to prevent a defendant from appealing an adverse ruling issued at one stage but not the other.

Furthermore, adopting plaintiffs' position would have the effect of forcing every public official, as a prerequisite to taking an appeal from a potential subsequent order denying summary judgment, to appeal from the denial of a Rule 12(b)(6) motion. We decline to give our imprimatur to a rule that would dramatically increase the number of interlocutory appeals at the dismissal stage.

Accordingly, we hold that the City Defendants' failure to appeal at the dismissal stage poses no impediment to our appellate jurisdiction to review the district court's qualified immunity determination at the summary judgment stage.

III.

Although we have appellate jurisdiction to review the district court's denial of the City Defendants' motion for summary judgment on qualified immunity grounds, the district court's failure to analyze the conduct of each individual defendant with respect to the constitutional right alleged to have been violated makes that task virtually impossible. For the reasons we set forth in more detail below, we will remand this case to the district court to redetermine the qualified immunity issue with respect to the conduct of each individual defendant.

A.

1.

In Harlow v. Fitzgerald, the Supreme Court set forth the applicable legal standard for qualified immunity: "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  Five years later, in Anderson v. Creighton, 483 U.S. 635, 107 S. Ct. 3034 (1987), the Court clarified the objective test it had propounded in Harlow.  The Court in Anderson held that to defeat qualified immunity it is not sufficient that the right at issue be clearly established as a general matter.  Rather, the question is whether a reasonable public official would know that his or her specific conductviolated clearly established rights.  Id. at 636-37, 107 S. Ct. at 3037 (A "law enforcement officer who participates in a search that violates the Fourth Amendment may [not] be held personally liable for money damages if a reasonable officer could have believed that the search comported with the Fourth Amendment.").

Taking heed of the narrower focus required by Anderson(i.e., at the official's specific conduct, not just the right allegedly violated) is critical, for it can mean the difference between immunity from suit and being held personally liable for money damages.  We recognized the significance of Anderson for qualified immunity determinations in Brown v. Grabowski, 922 F.2d 1097 (3d Cir. 1990), cert. denied, 501 U.S. 1218, 111 S. Ct. 2827 (1991).  There, we interpreted Anderson to

> require[] analysis not only of the clear establishment of the right that an official is alleged to have violated, but also of the specific official actions alleged to have violated the right.  Anderson thus appears to require a court faced with whether a claim of qualified immunity properly was denied to engage in an analysis of the facts adduced concerning the conduct of the official who claims immunity.

Id. 1111 (citations omitted).  See also Erwin Chemerinsky, Federal Jurisdiction § 8.6, at 478 (2d ed. 1994) ("The inquiry appears to be whether the officer had reason to know that the specific conduct was prohibited.").

In strong tension with Anderson's requirement that a court scrutinize the specific conduct at issue is the Supreme Court's admonition that qualified immunity be resolved as early in the litigation as possible.  "The overriding problem is the Supreme Court's insistence that the immunity defense be decided as a matter of law, when the reality is that factual issues must frequently be resolved in order to determine whether the defendant violated clearly established federal law."  Martin A. Schwartz, Section 1983 in the Second Circuit, 59 Brook. L. Rev. 285, 309 (1993).  Thus, crucial to the resolution of any assertion of qualified immunity is a careful examination of the record (preferably by the district court) to establish, for purposes of summary judgment, a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).  See, e.g.,Johnson v. Jones, ___ U.S. ___, ___, 115 S. Ct. 2151, 2155 (1995) (the "issue appealed concern[s], not which facts the parties might be able to prove, but, rather, whether or not certain given factsshowed a violation of 'clearly established' law") (emphasis added).

In this case, the district court failed to rule on the City Defendants' assertions of qualified immunity in its summary judgment ruling.  After the City Defendants filed a motion for clarification, the district court addressed the qualified immunity issue in a separate opinion and order.  Although the district court correctly recited the legal principles governing its resolution of the qualified immunity issue under Harlow and Anderson, its analysis fell short of the fact-intensive inquiry those cases require.

Specifically, the district court stated in conclusory fashion that the right allegedly violated here--the substantive due process right to be free from arbitrary and capricious administrative action--was clearly established:

> Here, the substantive due process rights allegedly violated by the City [D]efendants clearly were established at the time of the alleged violation. . . . At the time of the alleged violation, it was well-settled in this jurisdiction that the arbitrary and capricious application of applicable law by an administrative body violates an individual's substantive due process rights.

Grant v. City of Pittsburgh, No. 92-CV-1837, slip op. at 3-4 (W.D. Pa. Oct. 16, 1995).  But nowhere in its decision denying qualified immunity did the district court analyze the specific conduct of each City Defendant with respect to the constitutional right at issue.  See Brown, 922 F.2d at 1111.

At oral argument plaintiffs maintained that the district court's earlier decision denying summary judgment on the substantive due process claim contains a description of the individual City Defendants' specific conduct sufficiently detailed to support the district court's later decision denying qualified immunity en masse.  We disagree.  With respect to eight of the City Defendants--Raham, Armstrong, DeSantis, Eversmeyer, Downing, Wagner, Ferlo, and Ricciardi--the summary judgment ruling fails to set forth with enough specificity the conduct of each defendant that the district court thought sufficient to defeat qualified immunity.  See Grant v. City of Pittsburgh, No. 92-CV-1837, slip op. at 22-24 (W.D. Pa. Sept. 28, 1995).  With respect to four other City Defendants--Cohen, Darkins, Madoff and Regan (members of the City Council who voted in favor of the designation)--the district court announced no findings whatsoever.  We will therefore remand this matter to the district court to reevaluate the City Defendants' claims of qualified immunity consistent with the Supreme Court's decision in Anderson and our decision in Brown.  Cf. Vadino v. A. Valey Eng'rs, 903 F.2d 253, 257-59 (3d Cir. 1990) (recognizing our supervisory authority to remand unexplained grants of summary judgment for statement of reasons); Brown v. United States, 851 F.2d 615, 620 (3d Cir. 1988) ("[A]lthough it is within our power to do so, it would be inappropriate for us to decide this question on appeal, even if the record provided a sufficient basis for its resolution.").  On remand the district court should analyze

separately the conduct of each City Defendant against the constitutional right allegedly violated, i.e., the substantive due process right to be free from arbitrary and capricious administrative decisionmaking.

We recognize, of course, that appeals from decisions denying summary judgment are subject to plenary review. Thus, in the usual case a district court's failure to apply the correct legal standard would not preclude us from performing a de novoreview of the summary judgment record to determine whether there are material issues of fact in dispute. Cf. Vadino, 903 F.2d at 253 (recognizing supervisory authority to remand unexplained grants of summary judgment but reviewing decision de novo). But with regard to appeals from denials of summary judgment on qualified immunity grounds our review is limited to determining "whether or not certain given facts showed a violation of 'clearly established' law." Johnson v. Jones, ___ U.S. at ___, 115 S. Ct. at 2155 (emphasis added). That standard presupposes that we have been provided with a set of "certain given facts" against which to measure the clearly established right allegedly violated. Cf. Brown v. United States, 851 F.2d at 620. We think that the district court, which has had this matter before it since August of 1992, is in far better position than we are to review the record for evidence as to the specific conduct of each of the twelve City Defendants. See Harlow v. Fitzgerald, 457 U.S. at 819-20, 102 S. Ct. at 2739 ("We think it appropriate . . . to remand the case to the District Court for its reconsideration of this issue in light of this opinion. The trial court is more familiar with the record so far developed and also is better situated to make any such further findings as may be necessary.") (footnote omitted); Hare v. City of Corinth, Mississippi, 74 F.3d 633, 638 (5th Cir. 1996) (en banc) ("We leave to the district court the question whether there are genuine issues of material fact measured by the correct [legal] standard"); but see Johnson, ___ U.S. at ___, 115 S. Ct. at 2159 ("[W]e concede that a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed.").

B.

Another issue requires our attention. The parties have devoted substantial briefing to the question whether, in applying Harlow's objective test for qualified immunity, a court may "consider" evidence of a defendant's state of mind when motivation is an essential element of the civil rights claim. We hold that it can.

Harlow teaches that whether the City Defendants in fact knew that they were violating plaintiffs' constitutional rights is simply irrelevant to that analysis. Harlow, 457 U.S. at 815-16, 102 S. Ct. at 2736-37. See also Mitchell v. Forsyth, 472 U.S. 511, 517, 105 S. Ct. 2806, 2810 (1985) (describing Harlow as having "purged qualified immunity of its subjective components"). It is now widely understood that a public official who knows he or she is violating the constitution nevertheless will be shielded by qualified immunity if a "reasonable public official" would not have known that his or her actions violated clearly established law.

The subjective inquiry that Harlow proscribes, however, is distinct from the question whether a public official, in taking official action that but for an improper motive would not be legally proscribed, in fact harbored the improper motive. For purposes of clarity, when we use the terms "state of mind" and "motivation," we are referring to the state of mind element of the underlying offense, rather than to the question whether the public officials knew they were violating clearly established rights.

The City Defendants claim that under Harlow their subjective "political or personal motives" are irrelevant to the qualified immunity analysis. The plaintiffs counter that the City Defendants' formulation of the qualified immunity standard would effectively prevent any plaintiff whose constitutional claim has as an essential element the state of mind of the public officials from ever getting past qualified immunity.

Although we have not directly addressed this issue, cf.Losch v. Borough of Parkesburg, Pennsylvania., 736 F.2d 903, 910 (3d Cir. 1984) (defendants' reasonableness and good faith go to merits of plaintiff's retaliatory malicious prosecution claim), several of our sister circuits have. Those courts have held, with virtual unanimity, that, despite the broad language of Harlow, courts are not barred from examining evidence of a defendant's state of mind in considering whether a plaintiff has adduced sufficient evidence to withstand summary judgment on the issue of qualified immunity, where such state of mind is an essential element of the constitutional violation itself. See Crawford–El v. Britton, No. 94-7203, 1996 WL 480432 *3 (D.C. Cir. 1996) (en banc) ("This circuit and others have understood Harlow to allow inquiry into subjective motivation where an otherwise constitutional act becomes unconstitutional only when performed with some sort of forbidden motive . . .."); Broderick v. Roache, 996 F.2d 1294, 1298 (1st Cir. 1993); F.E. Trotter, Inc. v. Watkins, 879 F.2d 1312, 1316 (9th Cir. 1989); Auriemma v. Rice, 910 F.2d 1449, 1453–55 (7th Cir. 1990) (en banc), cert. denied. 501 U.S. 1204, 111 S. Ct. 2796 (1991); Poe v. Haydon, 853 F.2d 418, 430–32 (6th Cir. 1988), cert. denied, 488 U.S. 1007, 109 S. Ct. 788 (1989); Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 647–48 (10th Cir. 1988); Musso v. Hourigan, 836 F.2d 736, 743 (2d Cir. 1988).

In Halperin v. Kissinger, 807 F.2d 180 (D.C. Cir. 1986), the District of Columbia Circuit created an minor exception to this general rule. Plaintiffs in Halperin alleged that a wiretap of their home violated the Fourth Amendment. Defendants claimed qualified immunity on the basis that their actions were motivated by national security interests. The court held that if the national security justification was reasonable, defendants' qualified immunity defense would prevail regardless of the defendants' actual states of mind. In creating this exception, the D.C. Circuit explicitly justified its holding by referring to the special nature of national security cases. The national security exception has not been expanded by the D.C. Circuit or by any other court ruling on this matter.

The substantive due process violation alleged in this case is precisely the sort of claim where "clearly established law makes the conduct legal or illegal depending upon the intent with

which it is performed."  Id. at 184.  By their very nature, substantive due process claims of this kind involve the application of otherwise legitimate government machinery to achieve an illegitimate end.  When public officials invoke administrative processes for a legitimate purpose, they are acting in conformity with the Constitution and cannot be violating "clearly established" law (because they are not violating the law at all).  But when the same officials invoke administrative processes with an illicit purpose, they are violating substantive due process guarantees and, at the same time, "clearly established" law.  Qualified immunity is defeated not because the officials "in fact knew" that they were violating the Constitution, id. at 186, but because "reasonably competent public official[s]" who act with certain improper motives "should know the law [proscribes their] conduct."  Harlow, 457 U.S. at 819, 102 S. Ct. at 2738 (emphasis added).

The purely objective inquiry advocated by the City Defendants would essentially insulate government officials from liability for the very harm our substantive due process precedents have sought to redress:  using government authority to take actions that, because of the improper motives of public officials, have no rational relationship to a legitimate government purpose.  See generally Stephanie E. Balcerzak, Note, Qualified Immunity for Government Officials: The Problem of Unconstitutional Purpose in Civil Rights Litigation, 95 Yale L.J. 126, 127 (1985) ("[B]ecause these suits often involve the intentional abuse of government power, the Harlow standard would deny redress to victims of precisely the kind of official misconduct that the civil rights remedy was primarily intended to address.").

We therefore join our sister circuits in adopting the narrower view of Harlow.  Accordingly, in evaluating a defense of qualified immunity, an inquiry into the defendant's state of mind is proper where such state of mind is an essential element of the underlying civil rights claim.

2.

The City Defendants complain, however, that such a test is insufficient to weed out insubstantial claims at an early point in the litigation, in direct tension with the Court's decisions in Harlow, Mitchell, and Anderson.  Since the issue of state of mind will always be a question of fact that is "inextricably bound up with the merits," Bolden v. Alston, 810 F.2d 353, 356 (2d Cir.), cert. denied, 484 U.S. 896, 108 S. Ct. 229 (1987), allegations of improper motive would mean that qualified immunity rarely, if ever, could be determined as a matter of law.  Accordingly, the City Defendants ask us to follow the lead of several of our sister circuits by imposing on civil rights plaintiffs some sort of "heightened" procedural burden in §1983 claims in which improper motive or intent is an essential element of the substantive constitutional claim.  See, e.g., Crawford-El, 1996 WL 480432, at *3.

We initially observe that the City Defendants are incorrect to the extent they argue that the issue of qualified immunity could never be determined as a matter of law without an increased procedural burden.  A district court could conclude (as could a court of appeals) that, even assuming that the public

official acted with the improper intent, a reasonable public official would not have known that his or her specific conduct, taken with that intent, violated clearly established law. Indeed, it is precisely because of this possibility that we are remanding this matter to the district court for a conduct-specific analysis of the qualified immunity issue as it applies to each defendant.

Nevertheless, we agree that a per se denial of qualified immunity, whenever a plaintiff has alleged improper motive or intent, might inadequately cloak officials from vexatious lawsuits and unnecessary interference with the exercise of their public duties. We further recognize that intent-based claims are particularly vulnerable to groundless allegations by the plaintiff which in turn might lead to time-consuming discovery. We believe nevertheless that Fed. R. Civ. P. 56, as well as the principles expounded by the Supreme Court in Celotex v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986), adequately protect defendants from unfounded claims. We are, after all, attempting to balance the defendants' need for protection from unfounded claims and vexatious litigation, with the plaintiff's rights to vindicate his or her constitutionally guaranteed rights. We think that Rule 56 strikes the best compromise between these two competing interests.

First, Celotex clearly states that the moving party bears no burden of disproving unsupported claims. See Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. Thus, the defendant officer need only identify those claims that are deficient within the complaint, without engaging in a lengthy defense of his conduct. Coupled with a district court's reasonable limitation on discovery, Celotex adequately protects public officials from groundless allegations of "bad" intent. The Fifth Circuit agreed with this position in Tompkins v. Vickers, 26 F.3d 603, 608 (5th Cir. 1994), in which it held that a teacher could rely on circumstantial as well as direct evidence to prove unconstitutional motive in opposing a summary judgment motion, thereby rejecting the defendant's request for a heightened standard of proof for summary judgment: "[W]e are convinced that the requirements of Rule 56 accommodate the interests of public officials seeking protection from groundless claims as well as the interests of plaintiffs seeking vindication of constitutional rights." Other circuits have taken this approach as well. See Cuyahoga Valley Bd. of Education, 926 F.2d 505, 512 (6th Cir. 1991); Feliciano-Angulo v. Rivera Cruz, 858 F.2d 40, 47–48 (1st Cir. 1988); cf. Blue v. Koren, 72 F.3d 1075, 1083–1084 (2d Cir. 1995) (adopting "heightened" standard but noting court's doubt that standard "imposes a burden greater than is already required under Fed. R. Civ. P. 56").

Finally, we note that a heightened summary judgment standard is not only unnecessary, but also undesirable in light of the Supreme Court's decision in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986), which held that the burden of proof at the summary judgment stage and the trial stage are identical.

IV.

We will remand this case to the district court to reevaluate the City Defendants' claims of qualified immunity consistent with this opinion. The district court should take care

to analyze separately, and state findings with respect to, the specific conduct of each individual City Defendant, including his or her motives.

Each party to bear its own costs.