In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2411

ROGER FAIRLEY and RICHARD GACKOWSKI,

*Plaintiffs-Appellees*,

*v.*

EVAN FERMAINT, NOBERTO BERCASIO, and FRED COFFEY,

*Defendants-Appellants*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 C 5207—**Amy J. St. Eve**, *Judge*.

ARGUED NOVEMBER 7, 2006—DECIDED DECEMBER 20, 2006

Before EASTERBROOK, *Chief Judge*, and POSNER and
WOOD, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Two former guards at Cook
County Jail contend in this suit under 42 U.S.C. §1983
that some of their ex-colleagues violated the Constitution's
first amendment (applied to state actors via the four-
teenth) by vilifying and assaulting them because they
stood up for inmates' rights. According to the complaint,
the defendants and their confederates bully and ostracize
any guard who plays by the rules; these strong-arm tactics
organize and protect guards who beat inmates at whim
and then lie about their activities to their superiors,

criminal investigators, and judges in any suits that the prisoners may file. Plaintiffs' allegations may or may not be true; this litigation has not reached the point at which a judge or jury sifts fact from fiction.

Defendants moved for summary judgment on the ground of official immunity, and they have appealed from the order denying this motion. Despite its interlocutory character, such an order is appealable under the approach of *Mitchell v. Forsyth*, 472 U.S. 511 (1985). But there is a wrinkle: defendants asked the court to dismiss the complaint two years ago, before discovery commenced, and did not appeal from the adverse decision. They reply that *Behrens v. Pelletier*, 516 U.S. 299 (1996), allows successive interlocutory appeals at the complaint and summary judgment stages, so it must logically allow defendants to forego appeal at the complaint stage and save their arguments for summary judgment.

The problem is not, however, the number of appeals but timing. Litigants have only 30 days to appeal. See Fed. R. App. P. 4(a)(1)(A). Having let the time pass, a litigant cannot reopen the window by re-filing the same motion or its functional equivalent and obtaining the same decision. See *Charles v. Daley*, 799 F.2d 343, 347-48 (7th Cir. 1986). That would be equivalent to abolishing the time limit. Thus we held in *Garvin v. Wheeler*, 304 F.3d 628, 632-33 (7th Cir. 2002), that when an immunity-based motion for summary judgment duplicates a motion already made and denied—when no new facts or legal arguments are presented in support of the new motion—an appeal from the order denying summary judgment must be dismissed, because the maneuver is nothing but an effort to get around the time limit. Cf. *Vega v. Miller*, 273 F.3d 460, 465-66 (2d Cir. 2001) (new arguments allow a new appeal under *Behrens*).

In *Behrens* the successive motions rested on different grounds; the Supreme Court noted these differences

as part of the justification for allowing multiple interlocutory appeals. 516 U.S. at 308-09. It was not possible to characterize the second interlocutory appeal in *Behrens* as an effort to evade the 30-day limit for filing a notice of appeal from the initial decision. The holding of *Behrens* is that both an order declining to dismiss the complaint and an order denying summary judgment are "final" decisions under 28 U.S.C. §1291 when the defendant invokes an immunity to discovery or trial; the timing for permissible appeals did not arise. In our case timing is everything, and the generally applicable rule that the window for appeal cannot be reopened by filing the same motion again covers this situation.

The rule that successive motions do not reopen the time for appeal applies to all "final decisions"—and a decision rejecting an immunity defense is "final" even though the litigation continues. The independent "finality" of such decisions is the linchpin of both *Mitchell* and *Behrens*. So it will not help to assert that the doctrine does not concern interlocutory decisions; an order rejecting an immunity defense is "final" rather than "interlocutory" as the Supreme Court draws that distinction.

Perhaps one could doubt the wisdom of *Garvin* because it has the potential to encourage unnecessary protective appeals. Suppose that a public official prefers to avoid the cost and delay associated with an appeal at the complaint stage, confident that discovery either will foil plaintiffs' claims on the merits or fortify the basis of immunity. If discovery (unexpectedly) does not turn up new evidence, then *Garvin* means that the defendant cannot appeal from an order denying summary judgment: the invocation of immunity will just repeat the arguments made earlier, rendering the appeal untimely. To avoid ensnaring even the wary litigant, a court might instead say, as *Behrens* emphasized, that an order denying a motion to dismiss the complaint, and an order denying

summary judgment, are independently "final" (for purposes of *Mitchell*), so that each has its own 30-day period for appeal no matter what arguments have been raised. Such an approach would have the additional virtue of clarity and mechanical application, much-desired qualities in any jurisdictional doctrine. See *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988). But this approach also would require us to overrule *Garvin*, a step that defendants have not proposed.

*Garvin* cannot be treated as limited to successive motions for summary judgment and distinguished on the ground that this case involved a motion to dismiss the complaint followed by a motion for summary judgment. *Behrens* holds that an interlocutory appeal is proper from *any* decision finally rejecting a claim of official immunity. Both an order declining to dismiss a complaint and an order denying a motion for summary judgment fit that category, the Court held. There is no basis in *Behrens* or its predecessors for saying that all motions to dismiss must be sorted into one pile, and all motions for summary judgment into a second, with one appeal from each *category* of motion rather than from each order that is a "final decision" for the purpose of 28 U.S.C. §1291. So it does not make any difference that *Garvin* involved successive requests under Rule 56, while this case entails one request for relief under Rule 12 and a second under Rule 56. What does matter is that in both *Garvin* and this litigation the two motions were functionally identical, and entertaining an appeal from the second decision would effectively extend the time to appeal from the first.

One effect of this understanding will be to make defendants more likely to appeal from the district court's order denying a motion to dismiss the complaint. Yet this is not the only effect. Another is to reduce the incentive to file premature motions; a defendant who refrains from

filing a doomed motion to dismiss does not jeopardize a later appeal. A third effect is to induce defendants who *do* move to dismiss the complaint, and lose, to do more legal and factual digging before they file a motion for summary judgment. That effect is all to the good, because it improves the accuracy of judicial decision-making, and it is the sort of thing that *Behrens* contemplated would occur. Finally, in some cases the effect may be to postpone appellate review to the end of the litigation, when immunity may no longer matter (and all facts will be in focus if it still does matter). That cannot be dismissed as a trivial benefit to the judicial system.

Defendants concede that their motion for summary judgment replicated their motion to dismiss the complaint. Only the caption differed. Nothing that turned up in discovery mattered; no new legal argument was advanced.

Fortuitously, something changed *after* the district court denied defendants' renewed motion: 26 days later, the Supreme Court decided *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006), which holds that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 1960. Defendants rely on *Garcetti* for the proposition that plaintiffs' speech in the workplace is not covered by the first amendment, so they are entitled to prevail even though their reactions to that speech are asserted to be extra-legal and reprehensible. Such responses may be actionable under state law in the wake of *Garcetti*, defendants allow, but cannot be treated as constitutional torts.

Although it is tempting to see in *Garcetti* the sort of change that allows an appeal without offense to the rule that repetitious arguments do not open a new 30-day

period, things are not so straightforward. Plaintiffs maintain that defendants reacted adversely to two kinds of speech: not only statements made as part of their duties at work (the kind of speech to which *Garcetti* applies) but also to testimony that plaintiffs gave in inmates' suits. Assistance to prisoners and their lawyers in litigation is not part of a guard's official duties. To apply *Garcetti*, therefore, we would need to determine whether defendants reacted to plaintiffs' activities in litigation (they say not) and which of defendants' deeds can be traced to the litigation as opposed to events at work. Piecing out the state of the record, and drawing inferences from the evidence, is not allowed on an interlocutory appeal based on a claim of immunity. See *Johnson v. Jones*, 515 U.S. 304 (1995); *Via v. LaGrand*, No. 04-4011 (7th Cir. Nov. 17, 2006). The role of an appeal under *Mitchell* and *Behrens* is to determine whether the legal principles that apply to public officials were clearly established at the time those officials acted; it is not to determine what the officials did in fact, for that would impinge on the jury's task.

It was clearly established long before the events of which plaintiffs complain that state actors may not assault witnesses in federal litigation. That's a crime, see 18 U.S.C. §1512(a)(2), so no public official could think the conduct proper. Still, an interlocutory appeal is not the forum for resolving disputes about whether defendants did what plaintiffs accuse them of. Nor is an interlocutory appeal a means to obtain review of the question whether defendants were engaged in state action in doing whatever they may have done; that issue is unrelated to legal uncertainty and thus to the doctrine of official immunity.

If the defendants ultimately lose this litigation, they will be entitled to raise their immunity defenses on appeal from the final decision. See *Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir. 1988). All we hold today is that,

while *Garvin* stands, public officials cannot use a motion for summary judgment in order to reopen the time to take an interlocutory appeal from an order declining to dismiss the complaint. Although *Garcetti* might have allowed an appeal based on new legal arguments, *Johnson v. Jones* blocks that route given the material factual disputes, resolution of which is beyond the scope of any interlocutory appeal. This appeal is dismissed for want of jurisdiction.

POSNER, *Circuit Judge*, dissenting. The majority opinion remarks:

> Perhaps one could doubt the wisdom of *Garvin* [*v. Wheeler*, 304 F.3d 628 (7th Cir. 2002)], because it has the potential to encourage unnecessary protective appeals. Suppose that a public official prefers to avoid the cost and delay associated with an appeal at the complaint stage, confident that discovery either will foil plaintiffs' claims on the merits or fortify the basis of immunity. If discovery (unexpectedly) does not turn up new evidence, then *Garvin* means that the defendant cannot appeal from an order denying summary judgment: the invocation of immunity will just repeat the arguments made earlier, rendering the appeal untimely. To avoid ensnaring even the wary litigant, a court might instead say, as *Behrens* [*v. Pelletier*, 516 U.S. 299 (1996)], emphasized, that an order denying a motion to dismiss the complaint, and an order denying summary judgment, are independently "final", . . . so that each has its own 30-day period for appeal no matter what arguments have been raised. Such an approach would have the additional virtue of

clarity and mechanical application, much-desired qualities in any jurisdictional doctrine. . . . But this approach also would require us to overrule *Garvin*, a step that defendants have not proposed.

The defendants have not proposed that we overrule *Garvin* for the excellent reason that *Garvin* is readily distinguishable from the present case. So if my colleagues think it should be overruled, they should not refrain from overruling it just to punish the defendant's lawyer for obtuseness in having failed to ask us to overrule it. He was not obtuse. They have overread the case.

*Garvin* was a case of two successive motions for summary judgment on immunity, so that by appealing from the denial of the second motion but not from the denial of the first the defendant could be thought to have tried to extend the time to appeal beyond the 30-day limit for taking an appeal. (I don't think that's an accurate characterization, but I accept it for the moment.) In our case, a motion to dismiss was denied, discovery ensued, a motion for summary judgment was made and denied, and it was from that denial that the defendants appeal. As my colleagues acknowledge in the passage I quoted, it makes sense for a defendant not to appeal from the denial of his motion to dismiss if he thinks discovery will strengthen his case for immunity. He will balance the cost of the appeal against the cost of discovery, having regard also for the possible effect of discovery in turning a losing immunity defense into a winner and for the danger that losing an appeal from the denial of the motion to dismiss would reduce his chances of winning the subsequent appeal.

*Garvin* did not mention this argument, let alone reject it. It did point out that the additional discovery that the defendant conducted after the denial of the first motion for summary judgment did not turn up any facts favorable to his immunity defense. But that observation was con-

sistent with a rule that in the absence of exceptional circumstances you cannot file identical successive motions for summary judgment on immunity and be permitted to appeal from any or all of them. That could inundate the courts of appeals with multiple appeals in the same case. You can appeal from the denial of your motion to dismiss and from the denial of your *first* motion for summary judgment, but that's it. (An alternative, more lenient rule, which *would* require overruling *Garvin* but is not necessary for the sound decision of this case, would permit one appeal from denial of summary judgment without specifying that it must be taken from the denial of the first motion for summary judgment, if as in *Garvin* there is more than one such motion; for why should we care which denial the defendant appeals from?)

The concern with inundation is the opposite in this case: if failing to appeal the denial of a motion to dismiss blocks a subsequent appeal from denial of a motion for summary judgment, then courts of appeals could be inundated by protective appeals from denials of motions to dismiss. This point was made in *Vega v. Miller*, 273 F.3d 460, 465-66 (2d Cir. 2001), which my colleagues cite, and also in *Robbins v. Wilkie*, 433 F.3d 755, 763-64 (10th Cir. 2006), and *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir. 1996).

Allowing the appeal in this case would not be inconsistent with the dismissal of the defendant's appeal in *Garvin*. But to see this we need to understand that whether a decision can be distinguished, in order to avoid its having precedential force in a subsequent case, or must be overruled to have that effect, depends on the breadth of its holding, and that often there is a choice as to how broadly a holding should be understood. The choice is made by courts in later cases, the cases in which the decision is argued to be a precedent. *Garvin* can be read narrowly to hold that denials of second or successive

motions for summary judgment on grounds of immun-
ity cannot be appealed unless there has been some im-
portant change since the first denial, or broadly to hold
(with the same "unless" qualification) that the denial of a
motion for summary judgment cannot be appealed if a
motion for summary judgment *or* a motion to dismiss was
denied previously. It is our choice. The panel majority, in
the "Perhaps" passage that I quoted earlier, explained
why the narrower reading is superior, yet unaccountably
it chooses the broader reading.

Well, not quite unaccountably. For later in its opinion
the majority has second thoughts, and suggests two
reasons why the broader reading might be preferable
after all: that it would reduce the incentive to file doomed
motions to dismiss, and that it would encourage more
discovery. As to the latter point, the last thing the federal
courts need is more discovery. As to the former, "doomed"
motions to dismiss do not take up much time of a district
judge.

I said that that one way to describe an appeal from the
denial of a successive motion for summary judgment that
is identical to the first motion is as an attempt to extend
the time for appealing from the initial denial. The panel
majority embraces that interpretation as the linchpin of
its decision, saying (citations omitted):

> Litigants have only 30 days to appeal. Having let the
> time pass, a litigant cannot reopen the window by re-
> filing the same motion or its functional equivalent
> and obtaining the same decision. That would be
> equivalent to abolishing the time limit . . . . [I]t does
> not make any difference that *Garvin* involved succes-
> sive requests under Rule 56, while this case entails
> one request for relief under Rule 12 and a second
> under Rule 56. What does matter is that in both
> *Garvin* and this litigation the two motions were

> functionally identical, and entertaining an appeal from the second decision would effectively extend the time to appeal from the first.

Two things are overlooked in this passage: the difference between appeals from final judgments and interlocutory appeals, and the difference between motions to dismiss and motions for summary judgment.

Suppose a final judgment is rendered and the losing party does not appeal within the 30 or 60 days or whatever time is allowed for filing the appeal, but later thinks better of his decision, files a Rule 60(b) motion to vacate the judgment, appeals from the denial, and argues in the appeal that the judgment was wrong. That would indeed be a case of using an appeal from the denial of a motion as a means of extending the time for appealing an earlier ruling, and it would be objectionable because it would deny finality to the litigation. The defendants in this case are not trying to reopen a completed litigation. When they filed their motion to dismiss there was no final judgment; when they filed their motion for summary judgment there was no final judgment; and there still is no final judgment. It made and makes no difference to anyone whether they appealed from the denial of their motion to dismiss, or passed and appeal instead from the denial of their motion for summary judgment. The only effect of today's decision will be to engender the filing of protective appeals. What is the point? To honor *stare decisis*? But read narrowly, for the reason that the panel majority itself suggests in the "Perhaps" passage, *Garvin* does not control the present case; and it is entirely legitimate to read it narrowly. Courts read precedents broadly or narrowly depending on what the courts have learned subsequent to the precedents.

The other difference that the panel majority overlooks is the difference between a motion to dismiss and a motion

for summary judgment. Defendants are entitled to immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As the Court explained in *Behrens v. Pelletier*, *supra*, 516 U.S. at 309 (emphasis in original), "the legally relevant factors bearing upon the *Harlow* question will be different on summary judgment than on an earlier motion to dismiss. At that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.' On summary judgment, however, the plaintiff can no longer rest on the pleadings, see Fed. Rule Civ. Proc. 56, and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the *Harlow* inquiry." If a motion to dismiss on immunity grounds fails, it is natural for the defendant to decide that he had better try to find some evidence rather than take an appeal that he may be quite likely to lose. But he cannot know before discovery begins how productive discovery will be. There is no reason why, if he strikes out in discovery, as in this case, he should be denied an appellate determination as to whether the case should have been dismissed because he satisfied the *Harlow* standard. This approach is a natural extension of *Behrens*; it is consistent with *Garvin*; and it harms no one—its only effect being to head off protective appeals.

We have jurisdiction of the appeal, and should proceed to the merits.

No. 06-2411                                                        13

A true Copy:

    Teste:

                       _____
                       *Clerk of the United States Court of*
                       *Appeals for the Seventh Circuit*