# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-2411

ROGER FAIRLEY and RICHARD GACKOWSKI,

*Plaintiffs-Appellees,*

*v.*

EVAN FERMAINT, NOBERTO BERCASIO, and FRED COFFEY,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 C 5207—**Amy J. St. Eve**, *Judge.*

ARGUED NOVEMBER 7, 2006—DECIDED DECEMBER 20, 2006
ON REHEARING DECIDED MARCH 19, 2007

Before EASTERBROOK, *Chief Judge*, and POSNER and
WOOD, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* Two former guards at
Cook County Jail contend in this suit under 42 U.S.C.
§1983 that some of their ex-colleagues violated the Con-
stitution's first amendment (applied to state actors via
the fourteenth) by vilifying and assaulting them because
they stood up for inmates' rights. According to the com-
plaint, the defendants and their confederates bully and
ostracize any guard who plays by the rules; these strong-
arm tactics organize and protect guards who beat in-
mates at whim and then lie about their activities to their

superiors, criminal investigators, and judges in any suits that the prisoners may file. Plaintiffs' allegations may or may not be true; this litigation has not reached the point at which a judge or jury sifts fact from fiction.

Defendants moved for summary judgment on the ground of official immunity, and they have appealed from the order denying this motion. Despite its interlocutory character, such an order is appealable. But there is a wrinkle: defendants asked the court to dismiss the complaint two years ago, before discovery commenced, and did not appeal from the adverse decision. They reply that *Behrens v. Pelletier*, 516 U.S. 299 (1996), allows successive interlocutory appeals at the complaint and summary judgment stages, so it must logically allow defendants to forego appeal at the complaint stage and save their arguments for summary judgment.

Our initial decision in this case, 471 F.3d 826 (2006), dismissed the appeal for want of jurisdiction. Relying on *Garvin v. Wheeler*, 304 F.3d 628, 632-33 (7th Cir. 2002), and the principle that the time for appeal cannot be extended by seeking reconsideration of a district court's order after the 30 days has lapsed, see *Charles v. Daley*, 799 F.2d 343, 347-48 (7th Cir. 1986), we concluded that the defendants' appeal was untimely. They could have appealed from the order denying their motion to dismiss the complaint. When they failed to appeal from that decision, and then filed a motion for summary judgment reiterating arguments that the district court already had rejected, they were just attempting to extend the time for appeal, we held. Our opinion implied some doubt about the wisdom and scope of the decision in *Garvin* but observed that defendants had not asked us to revisit the subject, so we took circuit law as we found it.

Defendants' petition for rehearing, with the support of multiple *amici curiae*, has asked us to take a fresh look at

the subject. The request is not one we can dispatch with the observation that it comes too late, for defendants' position turns out to have the support of language in *Toeller v. Wisconsin Department of Corrections*, 461 F.3d 871, 873-74 (7th Cir. 2006), a decision that none of the parties cited to us and that we did not consider independently. In dealing with an interlocutory appeal that had been taken to assert a form of sovereign immunity, *Toeller* had this to say:

> WDOC argues that this court has jurisdiction over the district court's order rejecting its defense, noting that it is established that "States . . . may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity*." Nanda v. Bd. of Trs. of Univ. of Ill.*, 303 F.3d 817, 821 (7th Cir. 2002) (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993)). Toeller acknowledges this rule, but he argues that WDOC failed to file its notice of appeal within the time permitted by Fed. R. App. P. 4(a)—a step that is also required before this court may entertain the appeal.
>
> Toeller's position, however, rests on the mistaken premise that WDOC had one and only one opportunity to take an interlocutory appeal on this issue. He believes that this opportunity arose after the district court's initial denial of the State's motion to dismiss, which was docketed on December 23, 2003. But *Behrens v. Pelletier*, 516 U.S. 299 (1999), held to the contrary, in the closely-related area of interlocutory appeals from denials of motions to dismiss on qualified immunity grounds. See *id.* at 307. We see no reason why the rationale of *Behrens* should not apply with equal force to

> interlocutory appeals of Eleventh Amendment immunity claims. From that standpoint, WDOC's notice of appeal easily satisfied Rule 4(a). The district court denied WDOC's motion for summary judgment (which included its renewed Eleventh Amendment defense) on September 29, 2005, and the State filed its notice of appeal comfortably within the 30-day period allowed by the rule, on October 17, 2005. We conclude that we have jurisdiction over this appeal and thus may proceed to the merits.

This passage says that, when *Behrens* allows an appeal from both a decision denying a motion to dismiss a complaint and a decision denying a motion for summary judgment, the litigant's appeal from the latter decision cannot be rejected as an effort to extend the time to appeal from the former.

Just as our decision neglected *Toeller*, so the panel in *Toeller* did not mention *Garvin*. Perhaps it did not need to do so: unless the motions to dismiss and for summary judgment in *Toeller* were materially identical, then *Garvin* (as our panel understood it) did not foreclose appeal from the denial of summary judgment. A material difference between the arguments made in the two stages is not, however, the ground on which *Toeller* resolved the appeal. The stated rationales of *Garvin*, *Toeller*, and the decision in this appeal are not compatible. We need to bring harmony to the law of the circuit, and to do so it is best to return to first principles. We grant the petition for rehearing and proceed to decide this appeal anew.

*Mitchell v. Forsyth*, 472 U.S. 511 (1985), held that a defendant who claims qualified immunity is entitled to take an interlocutory appeal. *Mitchell* used the approach of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), which held that a decision is "final" (and thus

appealable under 28 U.S.C. §1291) when it conclusively resolves an important question that cannot be reviewed on appeal at the litigation's end. The Court concluded in *Mitchell* that qualified immunity gives the defendant a right not only to prevail but also to avoid entanglement in the litigation—sometimes dubbed a "right not to be tried," this entitlement includes a right to avoid discovery if matters are sufficiently clear at the outset of the suit. *Behrens* held that *Mitchell* logically implies a right to appeal from either or both of an order refusing to dismiss the complaint and an order denying a public official's motion for summary judgment, because each of these orders can "conclusively resolve" an aspect of the qualified-immunity right: an order refusing to dismiss the complaint conclusively rejects a defendant's claim of freedom from discovery, and an order denying a motion for summary judgment conclusively rejects a defendant's claim of freedom from trial. Each of these decisions is "final" in the *Cohen–Mitchell* framework, and §1291 allows the aggrieved party to appeal from every final decision.

Once a "final" decision has been made, the clock for filing a notice of appeal begins to run. It stops if a motion for reconsideration is filed while time for appeal remains, see *United States v. Dieter*, 429 U.S. 6 (1976) (holding that this principle applies even if the order is interlocutory and no rule specifically authorizes a motion for reconsideration), and starts anew once such a motion is denied. Fed. R. App. P. 4(a)(4). A motion for reconsideration filed outside the time for appeal (or otherwise provided by rule for such a motion), or a successive motion for reconsideration, does not affect the time for appeal or reopen the window. See *Charles v. Daley, supra*. When there are two "final" decisions in a case, the time runs independently from each. This would be clear enough if the first "final" decision were an order denying a motion to dismiss the complaint, and the second were the final decision after a

trial. It is no less true when (as a result of *Behrens*) multiple "final decisions" precede the single "final judgment." This is what *Toeller* said—correctly, we conclude.

*Garvin* could have been decided as a simple application of these principles. The district court denied a public official's motion for summary judgment. After the time for appeal had expired, defendant asked the district court to reconsider and appealed from the order denying that motion. Instead of applying the rule that an untimely motion for reconsideration never extends or reopens the time for appeal, however, the panel in *Garvin* stated that a motion making new legal or factual arguments might reopen the time—but that because no new arguments had been advanced in that case, the appeal must be dismissed. That analysis led us to ask whether the appellants in our case had made new arguments and, finding that they had not, to dismiss their appeal. But the search for new arguments is unsound. Once a final decision has been made, and the time for appeal (or an authorized motion to reconsider) has expired, it does not matter *what* arguments the litigant adduces. The window for appeal cannot be reopened.

The right inquiry under *Mitchell* and *Behrens* is what the court has done, not what arguments the litigant has made. Once the judge has conclusively denied a motion to dismiss the complaint or grant summary judgment, the time for appeal begins to run. A tentative decision, by contrast, is not "final" and does not start the time for appeal; the defendant is free to make new arguments (or reiterate old ones) without jeopardizing the opportunity to appeal once the district judge turns the tentative resolution into a conclusive one. To the extent that *Garvin* made appellate jurisdiction turn on the arguments presented *to* the judge, rather than the sort of decision made

*by* the judge, it is disapproved.[†] We now hold, in accord with *Behrens* and *Toeller*, that a public official may appeal from an order conclusively denying a motion (based on qualified immunity) seeking summary judgment, whether or not the official has appealed from an order denying a motion to dismiss the complaint, and whether or not the motion for summary judgment rests on new legal or factual arguments. But once a conclusive resolution has been reached at either stage, a renewed motion for the same relief, or a belated request for reconsideration, does not reopen the time for appeal. Accord, *Robbins v. Wilkie*, 433 F.3d 755, 762-63 (10th Cir. 2006); *Vega v. Miller*, 273 F.3d 460, 465-66 (2d Cir. 2001); *Grant v. Pittsburgh*, 98 F.3d 116, 120 (3d Cir. 1996).

This conclusion relieves public officials from any pressure to take what may be premature appeals from orders declining to dismiss complaints. See *Jacobs v. Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000), *id*. at 775 (concurring opinion); *McMath v. Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992). It also operates mechanically, a desirable feature in any jurisdictional rule. See *Budinich v. Becton Dickinson & Co*., 486 U.S. 196, 202 (1988) ("The time of appealability, having jurisdictional consequences, should above all be clear."). *Garvin* and our initial opinion could send litigants and judges on a tour of the record to determine whether and when a public official is entitled to appeal. How much preferable it is to have a rule that can be applied using only a copy of the district court's decision and a calendar.

---

[†] This opinion has been circulated to all active judges under Circuit Rule 40(e). No judge requested a hearing en banc on the question whether to change the legal analysis employed in *Garvin*. Circuit Judge Flaum did not participate in the consideration or decision of this case.

Our conclusion that this appeal is timely does not mean, however, that the defendants are home free. Defendants' principal argument relies on *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006), which holds that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 1960. Defendants invoke *Garcetti* for the proposition that plaintiffs' speech in the workplace is not covered by the first amendment, so they are entitled to prevail even though their reactions to that speech are asserted to be extra-legal and reprehensible. Such responses may be actionable under state law in the wake of *Garcetti*, defendants allow, but cannot be treated as constitutional torts.

Plaintiffs maintain, however, that defendants reacted adversely to two kinds of speech: not only statements made as part of their duties at work (the kind of speech to which *Garcetti* applies) but also to testimony that plaintiffs gave in inmates' suits. Assistance to prisoners and their lawyers in litigation is not part of a guard's official duties. To apply *Garcetti*, therefore, we would need to determine whether defendants reacted to plaintiffs' activities in litigation (they say not) and which of defendants' deeds can be traced to the litigation as opposed to events at work. Piecing out the state of the record, and drawing inferences from the evidence, is not allowed on an interlocutory appeal based on a claim of immunity. See *Johnson v. Jones*, 515 U.S. 304 (1995); *Via v. LaGrand*, 469 F.3d 618 (7th Cir. 2006). The role of an appeal under *Mitchell* and *Behrens* is to determine whether the legal principles that apply to public officials were clearly established at the time those officials acted; it is not to determine what the officials did in fact, for that would impinge on the jury's task.

It was clearly established long before the events of which plaintiffs complain that state actors may not assault witnesses in federal litigation. That's a crime, see 18 U.S.C. §1512(a)(2), so no public official could think the conduct proper. Still, an interlocutory appeal is not the forum for resolving disputes about whether defendants did what plaintiffs accuse them of. Nor is an interlocutory appeal a means to obtain review of the question whether the suit is barred by the statute of limitations. That subject has nothing to do with official immunity. Defendants appear to believe that all arguments of any stripe are open on an interlocutory appeal under *Mitchell*, but as *Jones* shows that's not so.

> When entertaining an interlocutory appeal by a public official who seeks the shelter of qualified immunity, the threshold question is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [public official's] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). See also, e.g., *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004); *Newsome v. McCabe*, 319 F.3d 301, 303-04 (7th Cir. 2003). Only if the answer is affirmative does the court inquire whether the official enjoys qualified immunity. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.

*Hosty v. Carter*, 412 F.3d 731, 733 (7th Cir. 2005) (en banc) (bracketed material in original). Whether plaintiffs' suit is untimely does not bear on either of the questions identified in *Saucier* and *Hosty*.

Defendants' further argument that they are not state actors, because all of the guards are on the same level of the employment hierarchy, is self-defeating at this stage of

the litigation. For if they are not state actors, they also are not entitled to take an interlocutory appeal. The *premise* of this appeal is that the defendants are public officials sued on account of their official conduct; by denying that premise and insisting that they behaved in a private capacity on a private frolic the defendants knock out appellate jurisdiction. See *Mitchell v. Aluisi*, 872 F.2d 577, 580 (4th Cir. 1989). Lack of state action would be a reason why this suit belongs in state court under state tort law, rather than in federal court under §1983, but an argument along these lines does not assert a right not to be tried; it just asserts a right to be tried in a different forum, and such a contention does not justify an interlocutory appeal. See *Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988).

Perhaps the state-actor theme can be recast as an argument that one public official's misconduct toward another at the same level of the bureaucracy cannot violate the Constitution. So put, the argument is within the first step of immunity analysis under *Saucier*. But so put the argument is a loser. Suppose one police officer arrests another or searches his house; that step, if taken without probable cause (and a warrant, if required for the search), violates the fourth amendment. See *Acevedo v. Canterbury*, 457 F.3d 721 (7th Cir. 2006); *Driebel v. Milwaukee*, 298 F.3d 622, 649-50 (7th Cir. 2002). Suppose the white guards at a prison mercilessly harass the black guards and make their lives miserable, or suppose the men demean the women. Such misconduct may be action-able under the Constitution. See, e.g., *Bohen v. East Chicago*, 799 F.2d 1180 (7th Cir. 1986); *Valentine v. Chicago*, 452 F.3d 670 (7th Cir. 2006). See also, e.g., *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982) (campaign of harassment against co-worker on account of speech can violate the first amendment); *Powers v. Summers*, 226 F.3d 815 (7th Cir. 2000) (same).

In litigation under Title VII of the Civil Rights Act of 1964, one worker's misconduct toward another does not automatically lead to liability for the employer, because liability under that statute is direct rather than vicarious. Only employers are subject to the law's commands, and employers are responsible for what *they* do (or elect to tolerate), rather than what everyone in the work force does. See *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. Boca Raton*, 524 U.S. 775 (1998). Things are otherwise under §1983. State agencies are not "persons" under §1983, see *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), and even units of local government are responsible only for their policies rather than misconduct by their workers. *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Liability falls on the misbehaving employees—which of course is why they are keen to assert immunities from suit.

Whether defendants engaged in the conduct of which plaintiffs accuse them—and, if so, whether they did it to retaliate for plaintiffs' constitutionally protected speech, or just because defendants have a mean streak—are questions that must be resolved at trial. Arguments based on *Garcetti*, the state-action doctrine, and the statute of limitations are preserved for decision on appeal from the final judgment. See *Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir. 1988).

AFFIRMED

A true Copy:

    Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*